## COMMONWEALTH vs. EDWIN WENTWORTH.

Norfolk.    November 21, 1887. — January 7, 1888.

Present: MORTON, C. J., FIELD, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Liquor Nuisance — Lease — Landlord's Control — Indictment — Variance.*

An indictment on the Pub. Sts. c. 101, § 9, alleging "control" by a landlord over
a liquor nuisance, is negatived by proof that the tenant is in possession under a
lease.

INDICTMENT under the Pub. Sts. c. 101, § 9, alleging that the
defendant, from June 1, 1886, to February 4, 1887, " had under
his control a certain building, . . . . and did then and there, while
said building was so under his control, unlawfully and knowingly
permit a certain tenement in said building to be used by one
Edward H. Galligan of said Canton for the illegal sale and
illegal keeping for sale of intoxicating liquors," and that said
Galligan kept and maintained a nuisance " with the knowledge
and permission of the said Edwin Wentworth, then and there
having control of said building as aforesaid."

Trial in the Superior Court, before *Pitman*, J., who allowed
a bill of exceptions, the material parts of which are as follows:

It was admitted that the defendant was the owner during the
time alleged of the building described in the indictment, and
that no person was licensed during that time to sell or keep for
sale intoxicating liquors in any part of the building.    There was
evidence that Galligan was the lessee of the defendant of part
of the building, by virtue of a lease which covered the time
alleged in the indictment; that liquors kept for sale had been
seized on the leased premises during the same time; that the
defendant was present at a trial in July, 1886, before a trial
justice, at which counsel for Galligan stated " that he would
admit that the liquors seized were kept for sale, but by whom
was the question"; that the defendant had said that he could
not be convicted if Galligan did make illegal sales, as he had
no notice; that the defendant was asked, on one occasion, if he
would pretend that the building in question was not used for
the purpose of a grog-shop, and he replied that he would not

say; that the defendant had recommended in writing that an application by Galligan for a license be granted; and that the defendant, in reply to the question, " Did you believe liquors were sold" on the leased premises? answered, " I presume it was so."

The defendant asked the judge to instruct the jury that the government had failed to prove by sufficient evidence that the defendant during the time alleged, or any part thereof, had the actual control, or any such control as is required to constitute the offence charged, and that if the premises described were leased to Edward H. Galligan during the time alleged, and said Galligan was in occupation of the same under said lease, the defendant could not be convicted. The judge refused so to rule, but ruled that said tenement was under the control of the defendant by virtue of the provisions of the Pub. Sts. c. 101, § 8, and that a man may be said to permit what he has the right and power to prevent, but which right and power he does not choose to exercise. The jury returned a verdict of guilty; and the defendant alleged exceptions.

*J. L. Eldridge*, for the defendant.

*A. J. Waterman*, Attorney General, for the Commonwealth.

FIELD, J. If a building is let to a tenant who enters into possession under a lease, the building is not under the control of the landlord, but is under the control of the tenant while he continues in possession under the lease, unless there are special provisions in the lease which give the control to the landlord. By the Pub. Sts. c. 101, § 8, the landlord can recover possession by entry or by action if the tenant uses the building for the illegal purposes described in the Pub. Sts. c. 101, § 6; but unless there are special provisions in the lease, the landlord cannot in any other manner prevent the tenant from using the building for these illegal purposes.

The Pub. Sts. c. 101, § 9, provide for the punishment of three different acts. If a person who owns a building, or has control of it, knowingly lets it for the illegal purposes specified, or if while having the building under his control he knowingly permits it to be used for these illegal purposes, or if after due notice that the building is used for these illegal purposes he omits to take all reasonable measures to eject the occupant, he

" shall be deemed guilty of aiding in the maintenance of such nuisance."

If the statute had been less carefully drawn, there would be some force in the contention that a person may be said to permit what he does not prevent, if he has lawfully the power to prevent it, and it is made by law his duty to prevent it. But the last clause of the section was, we think, intended to define the whole duty of a landlord who, having let his building not knowingly for any of these illegal purposes, has due notice that the tenant, after he has taken possession and control, is using the building for these purposes. See Pub. Sts. c. 100, § 20.

The evidence recited in the exceptions tended to prove an offence under the last clause of the section, if it tended to prove any offence, while the indictment is under the second clause of the section. There was no evidence that the defendant actually had the control of the building described in the indictment. So far as appears, he had not the control, but he could have taken control by ejecting his tenant, if the tenant was using the building for the illegal sale of intoxicating liquors. The principal exception must be sustained, and it is unnecessary to consider the others.                    *Exceptions sustained.*