## WINEMAN *v.* CLOVER FARMS DAIRY.

(In Banc. Jan. 8, 1934. Suggestion of Error Overruled Jan. 29, 1934.)

[151 So. 749. No. 30650.]

Zelma **W. Price,** of Greenville, for appellant.

Wynn, Hafter & Lake, of Greenville, for appellant.

Percy Bell, of Belzoni, for appellee.

Argued orally by **Zelma W. Price** and **Jerome S. Haf-**
ter, for appellant, and by **Percy Bell**, for appellee.

**Griffith, J.**, delivered the opinion of the court.

On October 12, 1931, appellee obtained judgment
against Mrs. A. E. Wineman for nine hundred and ninety-
nine dollars. Thereafter, on June 15, 1932, a writ of
garnishment was issued under said judgment and was
served on the First National Bank of Greenville, gar-
nishee. At the return term of the writ, the garnishee
answered admitting an indebtedness to Mrs. Wineman in
the sum of ninety-three dollars and thirty-six cents,
money on deposit, and further answered as follows:
"This Garnishee would respectfully show that Mrs. A. E.
Wineman has rented from it a safety deposit box which
is situated in the vault of this Garnishee. This Gar-
nishee is not advised and does not know what are the
contents of said box. Garnishee would show that it does
not have control or possession of the contents of said
box and is therefore unable to describe said contents."
At the same term, the July, 1932, term, the garnishee
filed a supplemental answer in which it averred that it
had been informed that the contents of the lock box
mentioned in its previous answer were claimed by Imelda
Wineman, a minor, and the garnishee suggested there-
with that Imelda Wineman be summoned to appear and
propound her claim. Later and at the same term the
claimant appeared and presented her claim in writing
under oath, and thereby asserted ownership not only of
the money on deposit but also of the contents of the bank
box. She prayed that a claimants' issue be forthwith
made up and tried.

Issue was not taken on the claim of the said third per-

son at the said July, 1932, term, and the matter rested until the cause came on for trial at the October term, and on the 18th day of October, 1932, when the claimant moved the court to dismiss the garnishment and for judgment for the claimant, because issue had not been joined by the plaintiff at the return term in July, 1932. The court overruled this motion and permitted the plaintiff to formally join issue on that date, to-wit, on October 18, 1932. Thereupon, the cause proceeded to trial and there was a verdict for the plaintiff.

We have examined the evidence and are of the opinion that the verdict is supported thereby, and also that there was no reversible error in the refusal by the court of the instruction requested by the claimant, and of which complaint is made in the argument. We therefore address ourselves at once to the two principal questions presented for decision.

It is the contention of appellant that it was error for the court to allow the plaintiff to join issue on the claim of the third person after the term to which the garnishment was returnable and at which the claim was filed; and as the basis for the contention appellant relies on section 3427, Code 1930, which governs the procedure when there is a claim by a third person to property levied upon by execution, and which section expressly provides that issue shall be made up at the return term; and it is to be observed that by section 153, Code 1930, the same procedure is made to apply to cases of claimants to property levied on by writs of attachment.

Section 1853, Code 1930, which deals with the subject of claims of third persons in garnishment, does not contain any express provision as to when issue shall be made up on the claimant's affidavit. The language of that section is merely that after the claimant has appeared and propounded his claim in writing, under oath, "the plaintiff may take issue thereon, and the same shall be tried and determined as other issues." If that language

were that the same shall be tried and determined as
other claimants' issues, the contention of appellant might
be maintainable, although it still would not be clear, for
when we turn to claimants' issues in replevin, section
3103, Code 1930, or to the general statute in reference to
claims of third persons, section 564, Code 1930, we find
that issue on the claim is not required to be made up only
at the return term, and for reasons which there sufficiently
appear. In order that we should be authorized to sup-
plement the provisions of section 1853, Code 1930, and by
construction add to the language thereof the requirement
that issue on claimants' affidavits in garnishment shall
be joined at the return term, it would have to clearly
appear to us that the legislative intent and purpose was
that we should do so, and that the reasons therefor were
identical with those applying to execution and attach-
ment. But the reasons are not identical, for in execu-
tion and attachment, the officer must, in most cases, take
the personal property into his possession, and it is the
policy of the law to prevent the accumulation and care
of such property in the hands of officers,—that the officer
shall be relieved thereof at the earliest practical time,
whereas in garnishment the property ordinarily remains
in the hands of the garnishee until final judgment.

It follows therefore that we cannot by judicial con-
struction rewrite section 1853, Code 1930, so as to in-
sert therein a positive requirement that the issue on the
claimants' affidavit in garnishment shall be made up at
the return term only, and in no case later than that term.
This is a matter that rests in the sound judicial dis-
cretion of the trial court, and is reviewable only when it
is shown that there has been an abuse of that discretion,
which is not the case here.

The other question is whether the contents of the
safety deposit box in the garnishee bank rested by the
judgment debtor, and which, according to the testimony
of the judgment debtor, contains bonds and some other

property of saleable value, is subject to garnishment. The testimony shows that this safety deposit box is of the same character as those in general modern use throughout the country, that is to say, there are two keys, one the master key which is held by the bank, and the other the customer's key, and that the contemporaneous use of both keys is necessary to open the box, except of course the box can be opened by a mechanic with appliances or tools suitable for that purpose. The argument of appellant is that the contents of the box sought to be garnished are not ''in the possession or under the control'' of the garnishee within the terms of the garnishment statute. Code 1930, section 1843.

If the box were not integrated into the vault, and were a separate box independent of the other boxes, so that the box could be delivered to the officer on final judgment in the same manner as a trunk or chest, there would seem to be no difficulty in the conclusion that such a separate box, although locked, would be subject to garnishment, and that the garnishee should be required to deliver over the same under garnishment process, and judgment. There, certainly, the box would be in the possession of the garnishee, and moreover it would be sufficiently under his control. And the box here is still a box in the possession of the garnishee, although integrated into a vault with other boxes. It has not lost its individual or separate character because of that fact. There is, therefore, no determinative legal difference between such a box, merely because of a group system of convenience, in construction and maintenance, as compared with one entirely separated from the vault. All the modern cases on the point so hold, and that such a box, or rather the contents thereof, are subject to the writ of garnishment.

One of the leading cases so holding is Tillinghast v. Johnson, 34 R. I. 136, 82 A. 788, Ann. Cas. 1914A, 960, reported and annotated in 41 L. R. A. (N. S.) 764, and

another is West Cache Sugar Co. v. Hendrickson, 56 Utah, 327, 190 P. 946, 949, reported and annotated in 11 A. L. R. 216. These cases, and the annotations mentioned, give all the modern cases on the subject and there is no dissent among them. There are two or three old cases which are to the contrary, but these have been overwhelmed by the later decisions. As said by the Utah court: "It certainly would be a reproach to our jurisprudence and to the administration of the law if it were held that the law may successfully be defied by human agencies, and that courts cannot make their processes effective merely because valuable property may be locked and concealed in a steel safe or receptacle." Or, as said by the Missouri court, State ex rel. Rabiste v. Southern, 300 Mo. 417, 427, 254 S. W. 166, 168, where it appeared that the money was stolen and locked in a safety deposit box: "It would indeed be a deplorable situation and a strange and harsh rule if all a thief has to do, after securing his booty, is to hasten to some bank and lock his ill-gotten gains in a safe deposit box and then be able to defy recovery of such property by the courts."

The argument of appellant is that the remedy is in equity, where the court acting in personam may order the box renter to produce the customer's key. All the delinquent renter would have to do to forestall the effectiveness of such a proceeding would be to absent himself from the state, and beyond the reach of personal process, or if he became determined in his contrariety, he could throw away his customer's key or destroy it, in which case the box, if ever opened, would have to be done by a mechanic and by suitable tools. And when the judgment of a competent court has adjudged that the contents of a safety deposit box are subject to sale to satisfy the debt of a judgment creditor, the judgment debtor, the lessee of that box, who refuses to present his customer's key that the box may be thereby

opened, ought not be allowed to stand in any better position than one who has lost or destroyed his key.

And the foregoing observation is the answer to the argument that often these safety deposit boxes contain personal papers and documents of a confidential nature of no present saleable value, and that it is highly obnoxious to the right of personal privacy that an order of court should run against such a receptacle and thereby expose the personal and private papers therein contained. No such a situation is suggested as existing in this case, and no complaint is made as to form of the judgment here rendered. The only point here made is that the box was not subject to garnishment at all. If such a box contains personal and private papers of the nature mentioned, it is within the privilege of the box renter to so make known to the court, and when so done, the court can and will make the proper order to preserve the privacy of the party or of all the parties concerned, and the renter can present his customer's key and be present to see to it that his private papers, of no present pecuniary value, are not read or taken away, and if he do not take the said steps, any objectionable result is from his own fault or neglect.

Affirmed.

**Smith, C. J.,** delivered a dissenting opinion.

I am of the opinion that the contents of the safety deposit box are not in the possession, or under the control, of the bank within the meaning of the statute. The bank was without the right to know or inspect the contents of the box, and therefore could not answer as to its contents.

The case is not similar to boxes, trunks, etc., deposited with another for safe-keeping, for there the bailee, when garnished, can answer that he has such articles in possession, and can deliver them, along with their contents,

to the court's officer in event the court should so order. The contents of this box are in the possession of the judgment debtor, and can be subjected to the judgment only in the way that all property of a judgment debtor in his possession can be so subjected.

**Ethridge, J.,** delivered a dissenting opinion.

I think the judgment rendered by the court below was erroneous for two reasons: First, the answer of the garnishee was not contested, and only the indebtedness admitted in the answer would be subject to the demand of the plaintiff, appellee here; and, second, the contents of the safety deposit box, under the facts disclosed in this record, are not subject to garnishment.

The facts are that the Clover Farms Dairy secured a judgment against Mrs. A. E. Wineman, and upon being informed that the First National Bank of Greenville was indebted to Mrs. A. E. Wineman, prayed for and secured a writ of garnishment which was served upon the First National Bank. The bank filed its answer at the July, 1932, term, admitting an indebtedness to Mrs. Wineman in the sum of ninety-three dollars and thirty-six cents evidenced by money on deposit which bore no interest; and after the usual averments in answers in garnishment, it then set forth as follows: "Further answering, this garnishee would respectfully show that Mrs. A. E. Wineman has rented from it a safety deposit box which is situated in the vault of this garnishee. This garnishee is not advised and does not know what are the contents of said box. Garnishee would show that it does not have control or possession of the contents of said box and is therefore unable to describe said contents." The answer was duly sworn to.

Thereafter, the garnishee filed a supplement to its answer stating that it had been informed that the contents of the lock box were claimed by Imelda Wineman,

a minor, and asked for process requiring Imelda Wineman to appear and make claim to the contents of the aforesaid lock box. On July 25, 1932, the said Imelda Wineman, by her mother and next friend, filed a formal claim for the contents of the lock box. On October 18, 1932, the plaintiff in judgment filed a motion to have the court direct the garnishee, First National Bank, to open the deposit box belonging to Mrs. A. E. Wineman for the purpose of ascertaining and reaching its contents; to have Mrs. A. E. Wineman and Imelda Wineman present, and to have made a complete inventory of the articles found therein, and to be permitted to prove that said box was rented by Mrs. A. E. Wineman. This motion did not contain any statement or averment as to what the contents of the box were, and the record shows no proof upon the motion; but the motion was overruled by the court.

Imelda Wineman filed a motion on the same day asking the court to discharge the garnishment writ, and to direct that the property levied on be surrendered to claimant in accordance with section 3427, Code 1930, and alleged that: "In support of her motion, this movant says the plaintiff in execution in this cause has defaulted in the making up of an issue for the trial of the right of the property levied on herein at the term of this court to which the execution was returnable, to-wit, the July term, 1932, this movant having, in due time, filed her claim to said property and tendered issue to plaintiff in execution."

The Clover Farms Dairy, plaintiff in the garnishment proceedings, filed a denial of the claim of Imelda Wineman to the property, saying that the property belonged to Mrs. A. E. Wineman, and was liable for the process, and prayed that an issue be made up between the parties to try the right of property at that term of court.

It will be noted that the bank admitted an indebtedness to Mrs. A. E. Wineman of ninety-three dollars and thirty-six cents.

Imelda Wineman, the claimant, filed a claim to all the property involved.

The plaintiff, not having contested the answer of the garnishee, was limited to the amount admitted to be in its possession or under its control. Williams v. Jones, 42 Miss. 270; Mechanics' & Traders' Ins. Co. v. Butler, 115 Miss. 476, 76 So. 521; Consumers' Ice Co. v. Cook Well Co., 71 Miss. 886, 16 So. 259, and Grenada Bank v. Seligman, 164 Miss. 168, 143 So. 474, 475.

It was, therefore, error for the court to render a judgment directing the garnishee, the First National Bank of Greenville, to turn over to the sheriff the contents of the safety deposit box. Under these decisions, the plaintiff, by not having contested the answer, was not entitled to impound the contents of the safety deposit box, even if it were subject to the garnishment. I do not think the contents of the lock box, whatever they might be, were subject to the garnishment, and I do not think the court had any power to direct the garnishee to open the box and turn the contents over to the sheriff.

It will be noted that the court overruled the motion to have the box opened, and the garnishee to amend its answer so as to show what the contents were, and to have some person present representing all the parties to see what was in the box, and what was delivered to the sheriff. The order of the court, as made, was not for the sheriff to take possession of the safe, open the box, secure the contents, and return an inventory to the court for adjudication as to whether the same were liable to the judgment debt.

Section 1838, Code 1930, provides that: "On the suggestion in writing by the plaintiff in a judgment or decree in any court upon which an execution may be issued, that any person is indebted to the defendant therein, or has property of the defendant in his hands, or knows of some other person who is so indebted, or who has effects or property of the defendant in his hands, it

shall be the duty of the clerk of such court, or of a justice of the peace in a case before him, to issue a writ of garnishment, directed to the sheriff or proper officer, commanding him to summon such person as garnishee to appear at the term of the court to which the writ of garnishment may be returnable, to answer accordingly.''

It will be noted that the expression used in this section is ''indebted to the defendant therein *or has property of the defendant in his hands.*''

Section 1843, Code 1930, reads as follows:

''Every person duly summoned as a garnishee shall answer on oath as to the following particulars, viz:

''First.—Whether he be indebted to the defendant or were so indebted at the time of the service of the writ on him, or have at any time since been so indebted; and, if so indebted, in what sum, whether due or not, and when due or to become due, and how the debt is evidenced, and what interest it bears.

''Second.—What effects of the defendant he has or had at the time of the service of the writ on him, or has had since, in his possession or under his control.

''Third.—Whether he knows or believes that any other person is indebted to the defendant; and, if so, whom, and in what amount, and where he resides.

''Fourth.—Whether he knows or believes that any other person has effects of the defendant in his possession or under his control; and, if so, whom, and where he resides.''

Section 1844, Code 1930, provides that all property *in the hands of the garnishee belonging to the defendant* at the time of the service of the writ of garnishment, shall be bound by and be subject to the lien of the judgment, decree, or attachment on which the writ was issued.

The record does not show, in this case, that the safety deposit box can be opened without irreparable injury, nor any manner in which it may be opened. The testimony shows that it cannot be opened except by having

a master key, and the key held by the person who rents the box; and that both the lessee of the box, and some employee of the bank with the master key, must be present when any box is opened. It is the duty of the bank, when required by the lessee, to produce this master key and assist in opening the box. The bank has no power or right to go into a box for any purpose. It is not a depository for hire, for a depository for hire is one in whose hands the property is placed, and must secure such property, and may use its own means and methods for safe-keeping the same. Here, the bank has no power at all to get into the safety deposit boxes, and no right to go into them, and the testimony in the case shows clearly that the lessee has the exclusive control over said safety deposit box, and has the legal right to have the bank assist in the opening of said box whenever same is desired by the lessee.

Therefore, the bank, in my opinion, has no sort of possession or control over the contents of said safety deposit box. Renting of such boxes is similar to the leasing of an apartment. In such case the owner of the apartment is not deemed to have possession or control thereof, unless special provisions are made in the lease therefor. Commonwealth v. Wentworth, 146 Mass. 36, 15 N. E. 138; State v. Frazier, 79 Me. 95, 8 A. 347. See, also, definitions in Words and Phrases, Second Series, vol. 1, p. 1021 et seq.

The words "in his hands," in section 1838, Code 1930, mean that the party garnished must have within his ready control or within his power to produce in court, the property or effects which are sought to be impounded by the garnishment. "Control," in the sense of the statute, does not mean that the garnishee has the power to prevent the owner of a safety deposit box from going into it; but means such a possession and capacity to take and deal with, and produce in court, as would enable a garnishee to relieve himself of all liability by

thus producing the property, which right is clearly given by section 1844, Code 1930.

If it be true that the garnishee may, by delivering to the sheriff the property, relieve himself of liability, the statute does not contemplate that he shall have to enter by force and damage the vault in order to produce the property.

In the case before us, the garnishee is directed to deliver the property, although there is no method by which it can do so without employing experts and doing violence to the vault. There is no method given the garnishee by which it can gain access to the safety deposit box to secure possession of such property. The order, as made, is not capable of being complied with. If it should be, the bank would be liable to the person whose box was forcibly opened. If it should not be complied with, which the record does not show, the judgment must be paid by the garnishee. In the cases cited in the majority opinion, the court relied upon statutes of other states as construed by their courts, which gave the court power of discovery. Such does not exist in this state, as it is a common law state except as modified by statute. And there is no statute in this state giving the circuit court the power to compel discovery and produce such information or property. I have searched the statutes and have found no statute similar to this in other states. The statutes in other states relied upon seem to have been greatly expanded by construction, and the courts in construing the statutes read into them provisions for safeguarding the rights of all parties by having them personally present and directing that they take inventories.

In the motion to have the box opened, counsel evidently relied upon these cases; but the court below refused to direct the box to be opened and to provide such safeguards.

I find no statute authorizing either the court or the

sheriff to enter upon and search safety boxes or receptacles by force, breaking, and entering.

It seems to me that unless the court had the power of discovery, it could not determine what was in the safety deposit box.

It may be that the chancery court, which acts upon the person, might have power over the lessee of the box, and might enforce compliance with its order by imprisonment for contempt; but the circuit court has never been given such power. The sheriff has not been given such power by any statute, and it seems to me that he could not be authorized so to do under section 23 of the Constitution, until the Legislature has provided a reasonable scheme founded upon information, supported by affidavits showing what property was in such a safety deposit box. Certainly, a sheriff cannot break into a safety deposit box and take possession of anything found, until and unless he had an affidavit stating what property was to be found therein; and a writ authorizing him to break and enter it clearly was not competent to be authorized by the court below. Such an order was clearly beyond the power of the court.

I think the judgment rendered should therefore be reversed, at least such part as dealt with the safety deposit box.

The judgment for the ninety-three dollars and thirty-six cents admitted to be due is unobjectionable.

**McGowen, J.**, concurs herein.