COMMONWEALTH *vs.* CHARLES S. ALBERT.
SAME *vs.* SAME.

Hampden.    May 6, 1940. — November 6, 1940.

Present: FIELD, C.J., LUMMUS, DOLAN, COX, & RONAN, JJ.

*Bribery. Public Officer. Municipal Corporations*, Officers and agents. *Pleading, Criminal*, Bill of particulars. *Words*, "Personally interested."

An indictment charging an offence in the general language of a statute, and the proof thereunder, are limited by a bill of particulars specifying the method and means by which the offence was committed.

An indictment alleging, as limited by a bill of particulars, that the defendant, a member of a municipal board in charge of awarding a contract, in violation of G. L. (Ter. Ed.) c. 268, § 8, requested a bidder to do a certain act in consideration of the defendant's voting to award the contract to him, was not proved by evidence that, on request made by the defendant for the first time after the board had awarded the contract to the bidder, he agreed to do such act in consideration of the defendant's signing the contract.

The words "personally interested" in G. L. (Ter. Ed.) c. 268, § 10, mean interested in a pecuniary or proprietary sense. Per RONAN, J.

Evidence merely that, after a city board had awarded a contract, a member of the board requested the contractor to secure his required performance bond through a certain broker, whereupon an arrangement was made and carried out that another broker through whom the contractor wished to secure the bond should pay his entire commission thereon to the first broker, did not warrant conviction under an indictment charging the board member with being "personally interested" in the contract in violation of G. L. (Ter. Ed.) c. 268, § 10.

Two INDICTMENTS, found and returned on September 25, 1939.

The cases were heard by *Giles,* J.

*G. J. Callahan & C. S. Lyon,* (*E. P. Brooks* with them,) for the defendant.

*J. F. Kelly,* Assistant District Attorney, for the Commonwealth.

RONAN, J. The defendant, a member of the city council of Springfield and also a member of the board of supervisors of the department of streets and engineering, a municipal board authorized in behalf of the city to award contracts for the construction of bridges, was tried by a judge, without a jury, and convicted upon two indictments. The first indictment charged him with a violation of G. L. (Ter. Ed.) c. 268, § 8, by corruptly requesting a gift or gratuity or a promise to make a gift or to do an act beneficial to him under an agreement that his vote, opinion or judgment would be given in a particular manner in a matter that was to come before him in his official capacity, and the second charged him with a violation of G. L. (Ter. Ed.) c. 268, § 10, by being personally interested, directly or indirectly, in a contract made by said municipal board in which the city was an interested party. The cases were tried together and the defendant rested at the close of the Commonwealth's evidence. The first case is here by appeal, with a summary of the record, a transcript of the evidence, and an assignment of errors. G. L. (Ter. Ed.) c. 278, §§ 33A-33G. The second case is before us upon the defendant's bill of exceptions.

We now consider the first case and shall briefly refer to facts that could have been found to have been established by the evidence. Proposals for the construction of a high-

way bridge were opened and read by the municipal board, which consisted of the mayor, an alderman and the defendant, on January 31, 1936, in accordance with the advertisement for bids. The invitations for proposals recited that the successful bidder must furnish a satisfactory surety bond, and the form of the proposal itself left a space in which to furnish the name of the surety company. After opening the bids, the board went into executive session and voted that the contract be awarded to the lowest bidder, A. L. Phelps, Inc. The bid of this company (hereinafter referred to as the contractor) disclosed the name of the proposed surety company if its proposal was accepted. The invitations for proposals provided that "Written notification of the acceptance of any proposal sent by Registered Mail to the address given on the proposal form shall be considered an adequate notice of the acceptance of said proposal."

On the morning of February 4, 1936, one Phelps, an officer of the contractor, went to the city hall to attend a conference with some representatives of a railroad corporation relative to the construction of the bridge. The city engineer gave him a slip of paper upon which was written a telephone number. Phelps called the number and a person, who said he was Charles Albert, congratulated him upon being the lowest bidder and inquired from whom he intended to secure the bond. Phelps replied that he had already arranged for the bond. The person with whom he was talking on the telephone then offered to extend the time for completion of the contract to one hundred twenty days. Twenty minutes later the same person with whom he had previously talked called upon the telephone and told Phelps that "they" would not accept a bond from the surety company that the contractor offered, and that unless Phelps withdrew the bond and purchased one from one Simons "they would see to it that the contract was never signed." Phelps told him that he would take the matter up with one who handled his insurance, and he was then told that, although he could not be forced to withdraw the bond he had offered, he "had better play ball because the

board of supervisors would have the last say on the job."
Phelps then saw one Baldwin who had charge of the insur-
ance for the contractor. Baldwin, on February 4, 1936,
called the telephone number of the defendant and inquired
if the man speaking was Charles Albert, and, when informed
that he was, Baldwin gave his name and said that he was
the insurance agent of the contractor and he asked the man
speaking (who could have been found to be Albert) what
objection he had to the surety company that the contractor
intended to offer as the surety upon its bond. Albert said
it was not acceptable to the city. Baldwin stated that this
company was acceptable to the Federal and State govern-
ments, and that the city had one or two bonds from this
company in amounts a great deal larger than the bond in
the present case. Albert again stated that this surety com-
pany was not acceptable to the city. Baldwin then asked
if it would be agreeable if he should pay his full broker's
commission to Samuel Simons and Albert replied that that
would be all right. Baldwin then telephoned Simons in
reference to paying the commission on the bond to him
and he paid the full broker's commission to Simons on Feb-
ruary 8, 1936. Under date of February 6, 1936, the con-
tractor received five copies of the contract for its signature.
No other parties had then executed the contract. The con-
tractor was advised by registered mail, under date of Feb-
ruary 7, 1936, that the board had on January 31, 1936,
awarded the contract to it and that the board had further
voted to allow one hundred twenty days for the completion
of the contract. Thereafter the contracts were signed and
the work was performed by the contractor.

The statute, G. L. (Ter. Ed.) c. 268, § 8, provides that
a "municipal officer who corruptly requests or accepts a
gift or gratuity or a promise to make a gift or to do an act
beneficial to him, under an agreement or with an under-
standing that his vote, opinion or judgment shall be given
in any particular manner, or upon a particular side of any
question, cause or proceeding, which is or may be by law
brought before him in his official capacity" shall be pun-
ished. The aim of the statute is to prevent a municipal

officer from using his office as an instrumentality for personal gain or private advantage, and to require him at all times to perform its functions consistently with the underlying principle that a public office is a public trust. *Boston* v. *Santosuosso*, 298 Mass. 175. *Boston* v. *Dolan*, 298 Mass. 346. The mere solicitation by a municipal officer of a gift or promise of the nature described, in consideration of the exercise of his official judgment in a certain manner, constitutes a violation of the statute. Lack of acceptance by the person solicited is immaterial. *Commonwealth* v. *Murray*, 135 Mass. 530. *Commonwealth* v. *Donovan*, 170 Mass. 228. *Commonwealth* v. *Hogan*, 249 Mass. 555.

The Commonwealth furnished a bill of particulars specifying that the defendant corruptly requested Phelps to secure a bond from Simons in consideration for the defendant's vote to award the contract to Phelps's company. These specifications set forth the method and means by which the Commonwealth intended to prove the offence charged in the indictment was committed, and restricted the scope of the indictment and the manner of proof to the grounds alleged in the specifications. The indictment is to be read with the specifications, *Commonwealth* v. *Snelling*, 15 Pick. 321; *Commonwealth* v. *Giles*, 1 Gray, 466; *Commonwealth* v. *Haywood*, 247 Mass. 16, and the latter are a part of the record. *Commonwealth* v. *Howard*, 205 Mass. 128. *Commonwealth* v. *Gedzium*, 259 Mass. 453. *Commonwealth* v. *Snyder*, 282 Mass. 401.

It is undisputed that the vote to award the contract to the contractor was passed at a meeting of the municipal board held on January 31, 1936. There was no evidence that the defendant had made any request of Phelps until February 4, 1936. The specifications set forth categorically that the alleged corrupt agreement between the defendant and Phelps was made before the defendant voted to award the contract, and that the said agreement was the consideration for the vote that was to be taken by the defendant at the meeting of the municipal board. The evidence tended to show that the defendant and Phelps had entered into an agreement on February 4, 1936, by which, in consideration

of Phelps's securing a bond from Simons, the defendant agreed to sign the contract. Proof of this agreement even if violative of the statute was insufficient to prove the alleged corrupt agreement set forth in the specifications. The specifications could have been amended to correspond with the proof. G. L. (Ter. Ed.) c. 277, § 40. *Commonwealth* v. *Bartolini*, 299 Mass. 503, 509. *Commonwealth* v. *Green*, 302 Mass. 547, 553. But no amendment was sought. A defendant charged with requesting a bribe as the price for a vote to be cast by him to award a contract to a third person ought not to be convicted for requesting a bribe after a contract has been awarded as the price for signing a contract with such third person. The eighth, ninth, tenth and eleventh assignments of error, based respectively on the refusal of the judge to grant requests that there was no evidence that prior to the defendant's vote awarding the contract he requested any gift, gratuity, or a promise to make a gift or to do an act beneficial to him, must be sustained. The evidence was not sufficient to prove the commission of the offence charged in the indictment by the means and in the manner set forth in the bill of particulars. The seventh assignment of error, which was to the refusal to rule that the defendant was entitled to an acquittal upon the indictment, bill of particulars and the evidence, must also be sustained. *Commonwealth* v. *Donoghue*, 266 Mass. 391, 397. *Commonwealth* v. *Stone*, 300 Mass. 160. The sufficiency of the pleadings and evidence was properly raised by a request. *Commonwealth* v. *Carter*, 306 Mass. 141. The judgment or sentence, accordingly, must be set aside. "The offence must not only be proved as charged, but it must be charged as proved." *Commonwealth* v. *Blood*, 4 Gray, 31, 33. *Commonwealth* v. *Phelps*, 11 Gray, 72. *Commonwealth* v. *Dean*, 109 Mass. 349, 352. *Commonwealth* v. *Wentworth*, 146 Mass. 36, 38. *Commonwealth* v. *King*, 202 Mass. 379, 389. *Commonwealth* v. *Coyne*, 207 Mass. 21. *Commonwealth* v. *LaPointe*, 228 Mass. 266, 268.

In view of the conclusion we have reached it is unnecessary to consider the various other assignments of error.

They may not be presented in the same form at the next trial.

The principal contention of the defendant in the second case is that he was not personally interested, directly or indirectly, in the contract between the contractor and the city. The indictment alleged that he had such an interest; and the bill of particulars stated that the defendant had a personal interest in the contract in that he corruptly requested Phelps to secure the bond to accompany the contract from one Simons, and that the defendant was to benefit personally in that it was agreed that the commission for the bond was to be paid to Simons. The statute, G. L. (Ter. Ed.) c. 268, § 10, so far as material, provides that "a member of a city council or any branch thereof or of a municipal board of a city who is personally interested, directly or indirectly, in a contract made by the city council or by any branch thereof, or by such board or by authority derived therefrom, in which the city is an interested party," shall be punished. The nature of the personal interest a municipal officer must possess in order to prove a violation of this statute has never been defined by this court. The term "interest" is one of broad significance and its meaning in any particular case depends upon the setting in which it is employed. *Browning* v. *Bancroft*, 5 Met. 88. *Northampton* v. *Smith*, 11 Met. 390. *Commonwealth* v. *O'Neil*, 6 Gray, 343. *Hitchcock* v. *Shaw*, 160 Mass. 140. *Seward* v. *Revere Water Co.* 201 Mass. 453, 455, 456. *Renwick* v. *Macomber*, 233 Mass. 530. *Dealtry* v. *Selectmen of Watertown*, 279 Mass. 22.

There are interests based upon sympathies and prejudices, upon feelings and emotions, which may be powerful factors exerting consciously or unconsciously a material influence upon official conduct. Such interests are too indefinite and uncertain to furnish standards for the practical administration of the criminal law. The law does not attempt to reach them. They are not within the scope of the instant statute. But what the law seeks and insists upon is that a municipal officer in making contracts for the city shall not serve in a dual capacity. He cannot law-

fully execute a contract where he stands in such relation to it that he will thereby secure a profit or sustain a loss. He can have no proprietary interest in the contract. A contract that will affect his financial worth is one concerning which he is barred from acting as a representative of the city. The words "personally interested" must be construed to mean interested in a pecuniary or proprietary sense. *Boston* v. *Simmons*, 150 Mass. 461. *Sylvester* v. *Webb*, 179 Mass. 236, 240. *Slocum* v. *Medford*, 302 Mass. 251, 254. *Wayman* v. *Cherokee*, 204 Iowa, 675. *O'Neil* v. *Flannagan*, 98 Maine, 426. *Tuscan* v. *Smith*, 130 Maine, 36. *Thompson* v. *School District No. 1*, 252 Mich. 629. *Harrison* v. *Elizabeth*, 41 Vroom, 591. *People* v. *Hyde*, 156 App. Div. (N. Y.) 618. *Wilson* v. *New Castle City*, 301 Penn. St. 358. *Mumma* v. *Brewster*, 174 Wash. 112. *White* v. *Board of Education*, 117 W. Va. 114.

The evidence, which need not be further narrated, did not prove that the defendant was interested either directly or indirectly in the contract between the city and A. L. Phelps, Inc., and the first and seventeenth requests, that upon all the evidence the defendant was entitled to an acquittal on each of the two counts of the indictment, ought to have been given.

In the first case the judgment is reversed and in the second case the exceptions are sustained.

*So ordered.*