COMMONWEALTH *vs.* AMERICAN NEWS CO., INC.

Bristol.    January 4, 1955. — July 8, 1955.

Present: QUA, C.J., WILKINS, SPALDING, & COUNIHAN, JJ.

*Practice, Criminal,* Variance.    *Pleading, Criminal,* Bill of particulars. *Obscene, Indecent or Impure Publication.    Book.*

An unamended specification in a bill of particulars as to the time of commission of the offence alleged in an indictment restricted proof of the time to that specified.    [77]

Conviction of a wholesale book dealer upon an indictment based on G. L. (Ter. Ed.) c. 272, § 28, as appearing in St. 1945, c. 278, § 1, and, as read with specifications in a bill of particulars, charging that the defendant had in his possession for the purpose of sale, exhibition or circulation to a person under the age of eighteen years a book which was obscene, indecent and impure or manifestly tended to corrupt the morals of youth, and that "the time [of the alleged crime] was within the three months next preceding" a specified date on which the book was displayed for sale and was sold in a retail store, was precluded on the ground of variance where, although there was evidence that the defendant had possession of the book prior to sale of it by him to the store and that in the same month in which the sale in the store occurred employees of his "brought books to the store and put them on the floor or in the racks that were there," there was no evidence that the book in question was one of the books so brought to the store, or as to when the sale of the book by him to the store was made, or otherwise that he had possession of the book within the period specified.    [77]

INDICTMENT, found and returned on November 13, 1950. The case was heard by *Good,* J., without a jury.

*Gerald P. Walsh,* (*Manuel L. Robbins* of New York, with him,) for the defendant.

*John W. McIntyre,* Assistant Attorney General, for the Commonwealth.

SPALDING, J.    The defendant was tried on an indictment charging that it "did unlawfully import, buy, procure, receive and have in its possession for the purpose of distribution, sale, exhibition and circulation, to persons under the age of eighteen years, certain books, pamphlets, printed papers, description and other things, obscene, indecent and

impure manifestly tending to corrupt the morals of youth."
In a motion for particulars the defendant asked the Com-
monwealth, among other things, to state "The facts on
which . . . [it] relies in support of its allegation in said
indictment of distribution, sale, exhibition, and circulation
to persons under the age of eighteen years, of certain books,
pamphlets, printed matter, and other things obscene, in-
decent, and impure." In response, the Commonwealth
specified as follows: "The exhibition for perusal and sale
in an open book rack prominently displayed in the store
and the sale of this and other books without restriction or
limitation at twenty-five cents to any would-be purchaser."
The book involved was "Duke" by Hal Ellson. The case
was tried to a judge who found that the story was one which
manifestly tended to corrupt the morals of youth and that
"this defendant had in its possession this book for the pur-
pose of sale, exhibition, loan or circulation to the general
public including a person under the age of eighteen years."
He found the defendant guilty and imposed a fine. The
case comes here on the defendant's exceptions to certain
rulings made by the judge.

One Verville, a police woman employed by the city of
Fall River and whose age was thirty-three years, testified
that on June 16, 1950, she entered the Hande Shoppe in
that city, where books and papers are sold at retail, and
purchased a copy of "Duke" from Miss Cash, a clerk em-
ployed there.

Miss Cash, called by the Commonwealth, testified as fol-
lows: The book in question was displayed on a rack which
was installed in the store by one Shea who was "connected
with the American News Company." The books were
"placed on the racks by the man who delivered them";
the "storekeeper had nothing to do with that." The book
"Duke" was "supplied by the American News Company
and was on the American News rack." She was given "no
instructions . . . as to whom these books should be sold."
Books of this sort sold for twenty-five cents. Ordinarily a
customer would come into the store and pick out the book

he wanted and pay for it, and that is what happened in the sale of "Duke" to the police woman. After books were delivered to the store by a distributor they were charged to the store and were "the store's books . . . to do with as they pleased and the American News Company had nothing further to do with them." "The American News did not control in any way what the witness or the Hande Shoppe did with the books after they were purchased by the Shoppe." The witness had "no business connection of any kind with the defendant." The owner of the store, Mrs. Lang, took care of ordering and paying for the books. Most of the customers who came to the store were "all grown up but there were children under eighteen who did purchase books" there.

One Brereton, a police officer, testified that the defendant's place of business was a "wholesale establishment" from which books were sold and distributed to retail stores and that there was no evidence of any retail sales there.

The indictment was based on G. L. (Ter. Ed.) c. 272, § 28, as appearing in St. 1945, c. 278, § 1, of which the portions here material are, "Whoever sells or distributes . . . to a person under the age of eighteen years a book . . . which is obscene, indecent or impure, or manifestly tends to corrupt the morals of youth, or . . . receives or has in his possession any such book . . . for the purpose of sale, exhibition, loan or circulation to a person under the age of eighteen years . . . shall . . . be punished . . . ."

Several offences are embraced in the statute. But reading, as we must, the indictment with the specifications (*Commonwealth* v. *Albert,* 307 Mass. 239, 243), we think that the defendant was charged in effect with having in its possession a book which was obscene, indecent, and impure, and manifestly tended to corrupt the morals of youth, for the purpose of sale, exhibition, and circulation to a person under the age of eighteen years. Under this charge the defendant could be found guilty if it had in its possession for the purpose of sale, exhibition or circulation to a person under the age of eighteen years (1) an obscene, indecent,

and impure book or (2) one which manifestly tends to corrupt the morals of youth.

At the close of the evidence the defendant presented several requests for rulings. Among those denied were requests 1 and 11 which read: "1. The evidence does not warrant a finding of guilty." "11. The Commonwealth has failed as a matter of law to adduce facts sufficient to constitute the defendant guilty beyond a reasonable doubt of the charge contained in the indictment." We are of opinion that the judge erred in denying these requests.

In its motion for particulars the defendant asked the Commonwealth to state "The date or dates and time or times of day when the said offence or offences are alleged to have been committed." The Commonwealth specified that "The time was within the three months next preceding June 16, 1950, at 2:30 P.M." This specification was not amended under G. L. (Ter. Ed.) c. 277, § 40, which provides for such amendment where there is a material variance between the evidence and the bill of particulars. Thus the specification affected the indictment and restricted the proof to the matters specified. *Commonwealth* v. *Giles,* 1 Gray, 466. *Commonwealth* v. *Haywood,* 247 Mass. 16, 19. *Commonwealth* v. *Snyder,* 282 Mass. 401, 412. *Commonwealth* v. *Albert,* 307 Mass. 239, 243. The Commonwealth, therefore, was obliged to prove that at some time within this period the defendant possessed the book in question for the purpose of sale, exhibition, or circulation to a person under the age of eighteen years. But possession of the book by the defendant within this period was not established. All that appears in the record is that prior to the sale of the book to the Hande Shoppe the defendant had possession of the book. When the sale to the Hande Shoppe was made does not appear. It is true that in June of 1950 employees of the defendant "brought books to the store and put them on the floor or in the racks that were there." But there is no evidence that the book in question was one of these books. The proof did not conform to the indictment as amplified by the specifications.

Because of what has been said it is not necessary to decide whether the judge's finding that the book in question manifestly tended to corrupt the morals of youth was warranted.

*Exceptions sustained.*