**COMMONWEALTH**
v.
**Edward J. SHINNICK**

**No. 81-2992**

Superior Court, Middlesex County
Commonwealth of Massachusetts

**April 2, 1982**

**Alexander Nappen,** counsel for plaintiff.
**John Arthur Johnson,** counsel for defendant.

## ON THE COMMONWEALTH'S MOTION TO CONTINUE THIS CASE WITHOUT A FINDING FOR ONE YEAR
### and
## MOTION FOR A HEARING
### and
## WITHDRAWAL OF ITS MOTION THAT CASE BE CONTINUED WITHOUT A FINDING

### Introduction

I say in all charity and common sense that we must learn to distinguish what is venal from what is venial, and stop distracting attention from big faults by ferocious attacks on little ones. There is something unpleasantly sadistic about breaking butterflies on a wheel. . . . Then Professor, later Supreme Judicial Court Justice, Robert Braucher quoting remarks by Robert Moses on Conflict of Interest as an introduction to Professor Braucher's 1962 article on Conflict of Interest in Massachusetts which analyzed legislation substantially similar to what the defendant has been charged with violating in this case.

One's sensibilities become saturated almost to the point of despair by the recurring injustices which appear to plague the so-called criminal justice system. Almost all of the injustice which occurs is typically at the expense of victims of crime and it is not in the least reassuring that the injustice perpetrated upon the person who is charged with a crime in this case is not a common occurrence. Injustice is injustice whenever and to whomever it occurs, and a miscarriage of justice occurred here when Edward Shinnick was indicted in Middlesex County for violating section 5 of chapter 526 of the Acts of 1968. The indictment charges Shinnick with "being a member, agent or employee of the Woburn Golf and Ski Authority, did contract with or was interested in, either directly or indirectly, a contract with the authority" from April 1, 1977 to April 1, 1979.

### Findings

Shinnick's affidavit and facts which he has stipulated to at the request of the Commonwealth, each filed with the papers in this case, set out the following facts relevant and material to the offense he has been charged with. On October 1, 1981 Shinnick was indicted for and is currently charged with violating a provision of Chapter 526 of the Acts of 1968. Chapter 526, which was enacted in July, 1968 established the Woburn Golf and Ski Authority ("the Authority") as "a public body politic and corporate" to acquire both the property of the Woburn Country Club and a ski area at Horn Pond Mountain and thereafter "to establish, maintain and operate a ski business and golf club thereon." Section 5 of Chapter 526 sets out a typical conflict-of-interest provision which requires in part that "Any member, agent or employee of the Authority who contracts with the Authority or is interested, either directly or indirectly, in any contract with the Authority, shall be punished by a fine of not more than one thousand dollars or by imprisonment for not more than one year, or both."

As alluded to in the Supreme Judicial Court's decision of **Woburn Golf & Ski Authority v. Woburn Country Club, Inc.,** 365 Mass. 415 (1974), the Authority was created as a public authority in order to take over and to operate a golf club and a ski area on properties which the City of Woburn had acquired on foreclosure for failure to pay taxes. Also alluded to in that decision, which ruled that the Authority's lease of the golf club and ski area to the financially troubled Woburn Country Club was inconsistent with the provisions of Chapter 526, was the withdrawal of the Club's liquor license by the Commonwealth's Alcoholic Beverages Control Commission (ABCC). As indicated in Shinnick's affidavit,

which counsel for the Commonwealth has conceded is truthful, and as confirmed at a hearing before this court on March 22, 1982, after the Authority's lease to the Woburn Country Club was invalidated and the Country Club's liquor license withdrawn, recreational and social activities at both the golf club and ski area in 1973 were practically non-existent. Thereafter the Authority itself began to operate the golf club, and at a meeting held in the late Spring of 1973, members of the Authority voted to take steps to obtain a liquor license as soon as possible in order both to increase public participation in the recreational and social activities of the Authority and to provide funding for these activities. In mid-June, 1973, members of the Authority met with representatives of the ABCC to consider the legal and other obstacles to the Authority obtaining a liquor license. At that meeting were both the Executive Secretary and a Commissioner of the ABCC, Shinnick, who was then Chairman of the Authority and another member of the Authority. The Executive Secretary of the ABCC confirmed that the Authority, as a public agency, could not legally obtain and hold a liquor license unless the General Court legislated otherwise and that it was unlikely such legislation would be enacted. The ABCC's Executive Secretary then suggested that another entity be created and that the Authority lease its property to that other entity which could legally obtain and hold a liquor license. Shinnick and the other member of the Authority expressed concern about possible loss of control with such a lease arrangement and that such an arrangement would be inconsistent with the Authority's long-range plans to operate the former Woburn Country Club property as a community social center as well as a recreation facility. A consensus was reached at that meeting that it would be appropriate to provide for an interlocking or common board of directors between the Authority and a new entity to be created which would

lease the former Woburn Country Club property from the Authority.

Subsequently, the Authority retained a prominent Boston law firm to draft articles of organization and by-laws for a Chapter 180 or so-called "charitable" Corporation to be known as the Woburn Golf and Social Club, Inc. ("the Club"). The Club's draft articles of organization, signed by Shinnick as "Incorporator, Chairman, Woburn Golf & Ski Authority" and with several other persons listed as officers and directors including one Joseph L. Pecora as President, and its by-laws were then forwarded to the ABCC for any changes and comments and none were made. The Club's articles of organization and by-laws were then submitted for approval to the Secretary of the Commonwealth who on August 7, 1973 approved them. Thereafter the Club applied for and received a liquor license in December, 1973 and in early 1974 the first lease of the former Country Club property was entered into between the Authority, by Shinnick as Chairman, and the Club, by Pecora as President. Also in 1974, the Authority voted to and did establish a line of credit with the Club for its start-up costs including the payment of wages and the purchase of supplies.

Beginning in early 1974 and at all times material to this case, Shinnick, as Chairman of the Authority and on behalf of the Authority, pursuant to a unanimous vote of the Authority's members, entered into many arrangements with the Club. Shinnick was also a member of the Club during that period and participated in the Club's decisions to enter into those arrangements with the Authority including consecutive leases of the former Woburn Country Club property from the Authority to the Club. Throughout that period there existed a community of interests between the Authority and the Club with both sharing the same personnel, facilities and equipment. The only reasons for those arrangements were and are as indicated above. At no time did Shinnick or any member of the Club

have any interest, direct or indirect, in the lease arrangements between the Authority and the Club, nor did Shinnick own a share in or have any equity in the Club. Shinnick's sole interest was none other than, as he indicated in his affidavit, to see to it that the City of Woburn and its citizens benefited from the community of efforts between the Authority and the Club. As a result of Shinnick's efforts, various community and civic groups in the City of Woburn and elsewhere have used and continue to use the Club's facilities for meetings and for social events at no cost or at reduced rates. Shinnick has never received any money or any other remuneration by way of compensation or reimbursement for even out-of-pocket expenses for activities or involvement either with the Authority or with the Club. Shinnick is a man who is in his sixties, with an unquestioned reputation for integrity in his community and he has no prior involvement of any sort with the criminal justice system.

This case began when the Commonwealth sought a complaint against Shinnick in Woburn District Court. After a hearing, an Assistant Clerk of that Court denied issuance of the requested complaint against Shinnick. Upon appeal to a judge of that Court, that judge refused to rehear the denial of the Commonwealth's request. A direct indictment was then sought and obtained against Shinnick. On March 9, 1982, before this court, the Commonwealth made an oral motion to continue this case without finding for one year and to dismiss it in the event that Shinnick was not in any further trouble. Subsequently, the Commonwealth, when this court indicated that there appeared to be a miscarriage of justice on the facts here, withdrew its motion that this case be continued without a finding and moved for hearing. That hearing was held, as indicated, before this court on March 22, 1982.

On the basis of the above, it appears that it would be a miscarriage of justice to do anything other than to dismiss this case for the following reasons.

Technically, Shinnick has violated section 5 of Chapter 526 if that section is literally construed to characterize as criminal activity what occurred here. However, where the literal language of a statute leads to "injustice, oppression, or an absurd consequence", resort to the policy of a law may be had to "ameliorate its seeming harshness or to qualify its apparent absolutes." **Porter v. Nowak,** 157 F.2d 824, 825 (1st Cir. 1946). See, **Lexington v. Bedford,** Mass. Adv. Sh. (1979) 1909, 1918 (even literal construction of a statute will not be adopted if it leads to an absurd and unreasonable conclusion and another construction will lead to a logical conclusion); see also, **Calvey v. United States,** 448 F.2d 177, 182 (6th Cir. 1971) (presumption governing the construction of statutes is resolved against any unjust consequences).

The policy behind conflict of interest statutes generally is to prevent official wrongdoing, that is, a conflict between duty and personal gain. See, Town of **Nantucket v. Beinecke,** Mass. Adv. Sh. 2623, 2628 (the purpose of G.L. c. 268A, the Commonwealth's general conflict of interest law, is prevention of overreaching by municipal employees); J. Nolan, **Criminal Law** sec. 511 (1976); cf. G.L. c. 268, sec. 20 (prohibiting municipal employees from having financial interests in municipal contracts). Shinnick did not derive any personal gain from the contract referred to here other than the satisfaction of performing a benefit for his community and for his fellow citizens.

The statutory prohibition extends to contracts or an "interest" in an Authority contract. The Supreme Judicial Court has construed the words "personally interested" in a municipal contract as meaning "interest in a pecuniary or proprietary sense." **Commonwealth v. Albert,** 307 Mass. 239, 246 (1940) (citation omitted). If this statute is similarly construed, the indictment here should be dismissed because Shinnick had no such interest here.

Two further points should be made.

First, if Shinnick is found to have violated section 5 of Chapter 526, all Authority members are similarly in violation because of their dual roles as Authority members and as Club members. Second, not only is there no apparent "conflict of interest" between the Authority and the Club, rather there appears to be a harmony of interest as the Club was formed to further the Authority's interest. Therefore, it would be an absurd and unjust result to hold Shinnick criminally liable in this case.

For all the foregoing reasons, **sua sponte,** I order that the indictment against Edward Shinnick be dismissed.

Paul G. Garrity
Justice of the Superior Court