## COMMONWEALTH *vs.* JAMES H. CROWLEY.

Middlesex.    October 20, 1926. — November 27, 1926.

Present: RUGG, C.J., CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Larceny*, By false pretences.   *Bribery.   Practice, Criminal,* Former acquittal, Argument to jury.

Upon evidence showing that a member of the board of health of a town obtained money from the proprietor of a slaughter house upon false representations in effect that he had power and authority to procure for such proprietor a license to conduct his business in the town, that he had power to deprive the proprietor of his license, that, possessing this power, he could close up the business of the proprietor and "lock . . . [him] up," that he "was the boss in the town," and that "he could do as much as he pleased," the member of the board of health might be found guilty of larceny upon an indictment under G. L. c. 266, § 30, the false pretences being of present facts.

The propriety of a finding of guilty under the indictment above described was not affected by the fact that the proprietor of the slaughter house knew that the authority to grant a license for the slaughter house was with the board of selectmen, of which the defendant was not a member, and not with the board of health, of which the defendant was a member, where it appeared that the proprietor in fact gave the money to the defendant relying on the misrepresentations and hoping that by paying the money he could continue in his business and be saved from arrest.

An acquittal at a trial of an indictment under G. L. c. 268, § 8, charging the acceptance of a bribe by a municipal officer does not, as a matter of law, bar an indictment under G. L. c. 266, § 30, charging the same defendant with larceny although the same facts were relied on to support the two indictments.

In order to sustain a plea in bar of an indictment setting up that the defendant previously had been acquitted of the same offence, it must appear that the offences charged in the two cases were the same both in law and in fact.

INDICTMENT, found and returned on May 8, 1925, in eighteen counts, each of the first seventeen counts charging that the defendant "did steal of the amount and of the value in all of $25 of the property of Joseph Katzeff," and the eighteenth count alleging that $75 was stolen.

A bill of particulars set forth that the first theft was "in the vicinity of April 27, 1923," and that the others followed for the most part at monthly intervals, that charged in the eighteenth count being between May 1 and May 10, 1923; and that each theft was "by means of false representations to the said Katzeff, which, without purporting to give the exact language, were substantially as follows: That the defendant, a member of the board of health of Holliston, had the power to and would grant Joseph Katzeff a license to conduct a Jewish slaughtering business within the limits of the town of Holliston, or to permit the said Katzeff to continue in the business of conducting a Jewish slaughtering house within the town limits without a license. The false representations further were: That it would be necessary for the said Katzeff to make payments to the defendant from month to month in order to be allowed to continue in his business of conducting a Jewish slaughtering house in the town of Holliston."

The defendant previously had been indicted for bribery under G. L. c. 268, § 8. A bill of particulars as to that indictment set forth that the agreement or understanding on the basis of which the defendant procured the money was in substance: "That if the said Katzeff did not pay money to the defendant as a member of the board of health of the town of Holliston, he would be prohibited from exercising his trade of conducting a Jewish slaughtering business within the limits of the town of Holliston; that if he did pay the defendant, he would be unmolested in said trade; that the defendant would use his influence with the board of selectmen to insure that the said Katzeff procured a license

and that if complaints were made that the trade of the said Katzeff was a nuisance, the defendant, as a member of the board of health of the town of Holliston, would not vote to prohibit the exercise of the said Katzeff's trade within the town limits, but would vote to permit him to do so and would use his influence with other members of the board of health to prevent prohibition against the defendant exercising his trade within the limits of the said town." On that indictment, the defendant was found not guilty on May 8, 1925.

The defendant filed a motion to quash. The motion was heard and the indictment was tried before *Flynn*, J. The motion was denied. Material evidence at the trial is stated in the opinion. The defendant was found guilty on all counts. The judge reported the case to this court for determination.

*F. J. Carney,* (*J. E. Swift & J. A. Canavan* with him,) for the defendant.

*R. T. Bushnell,* Assistant District Attorney, for the Commonwealth.

CARROLL, J. The defendant was found guilty of larceny. The indictment was under G. L. c. 266, § 30, which provides, so far as material, that "Whoever steals, or with intent to defraud, obtains by a false pretence . . . the money or personal chattel of another . . . shall be guilty of larceny."

The defendant on March 1, 1925, and for several years prior thereto, was a member of the board of health of the town of Holliston, which town had a population of less than five thousand inhabitants. There was evidence that one Katzeff, who conducted a Jewish slaughtering business in Holliston, talked with the defendant in April, 1923, concerning Katzeff's business, and was informed by the defendant that he could not have a license that year. Some time later, Katzeff asked the defendant "what was the matter I got no license?" The defendant replied "What you think? I can work for a little money in the town?" The defendant was asked what he wanted and answered "I want a hundred dollars." Katzeff offered to pay $25. The defendant refused this and insisted on "not less than a hundred dollars."

Katzeff testified that he paid the defendant $25 and about two weeks later sent him $75; that when he paid $25 the defendant said, "I give — you go ahead now and get it, you know, you get it a paper, . . . and you get the license now."

Before and at the time of this conversation, the selectmen of Holliston, who had authority under the statute to grant a slaughter house license, had in their possession a written protest signed by the board of health against the granting of a license to Katzeff. The selectmen informed him he would not receive a permit to remove his slaughter house from Hill Street to Washington Street. Katzeff presented a petition for a license on Hill Street, which was signed by the members of the board of health. Before the license was granted on May 1, 1923, a letter, dated April 30, 1923, addressed to the selectmen, was filed with them; this letter was signed by all the members of the board of health, and in it they withdrew opposition to the granting of the license.

Katzeff further testified that the defendant told him when he paid the $100, "I can get it a license," that "He told me he will lock me up, so I pay"; that he paid the money so as to get the "slaughtering house permit"; that he knew the board of selectmen granted the license; that he paid the money to the defendant because he was a member of the board of health; that the defendant told him, "if we didn't pay him he would put us out of business and take our license away"; that the defendant said: "You not pay me . . . I will lock you up."

Rebecca Katzeff testified that in May, 1923, she went to the defendant's house with $75 of her father's money; that she asked the defendant "why we had to pay him, and he told me if we didn't pay him he would close up our business and take our license away"; that "he was the boss in the town . . . that he could do as much as he pleased." Katzeff's wife testified that the defendant said to her, "you now send me the money I will take away the license and I will close up your business"; that following this statement she sent the defendant $25.

The defendant's motion for a directed verdict was denied

and the defendant excepted. The case was reported to this court.

The defendant contends that no false representation of a present or past fact was made by the defendant; that the alleged misrepresentations had reference to a future situation, and were insufficient in law to support an indictment for larceny in obtaining money by false pretences. If the evidence of the Commonwealth were believed by the jury, they could have found that the defendant falsely represented that he had the power to deprive Katzeff of his license; that possessing this power he could close up the business of Katzeff and "lock . . . [him] up"; that he (the defendant) "was the boss in the town"; that "he could do as much as he pleased." The defendant, the jury could have found, obtained the money from Katzeff by means of false pretences of present facts; his false statement of his power and authority to do something in the future was a misrepresentation of a present fact. *Commonwealth* v. *Stevenson,* 127 Mass. 446. *Commonwealth* v. *Jackson,* 132 Mass. 16. *Commonwealth* v. *Althause,* 207 Mass. 32, 47, 48. The jury could have found that the statements of the defendant were made with the intent to deceive; that although Katzeff knew the authority to grant a license for the slaughter house was with the board of selectmen, he in fact gave the money to the defendant relying on the misrepresentations and hoping that by paying the money he could continue in his business and be saved from arrest. *Commonwealth* v. *Lee,* 149 Mass. 179, 184.

The defendant had been indicted for bribery, and in May, 1925, was acquitted of this crime, "the witnesses and the evidence at the trial of each indictment being the same." The defendant filed also called "Motion to Quash" the indictment in the case we are considering and "for plea thereto" says the defendant "was lawfully acquitted of the same offence with which he is now charged in said indictment." See G. L. c. 277, § 75. No person is to be held to answer on a second indictment or complaint for a crime of which he has been acquitted upon the facts and

on the merits.   G. L. c. 263, § 7.   A plea of former acquittal is a bar to an indictment for the same offence.   But the offence of bribery and that of larceny by false pretences are not the same.   Under G. L. c. 268, § 8, so far as material, a municipal officer who accepts or requests a gift or gratuity under an agreement that his vote, opinion or judgment shall be given in any particular manner "upon a particular side of any question, cause or proceeding, which is or may be by law brought before him in his official capacity" shall be punished.   The indictment in the bribery charge followed the language of the statute.   "In considering the identity of the offence, it must appear by the plea, that the offence charged in both cases was the same *in law* and *in fact.*" *Commonwealth* v. *Roby,* 12 Pick. 496, 503.   If the offences are distinct in point of law, however nearly they may be connected in fact, the plea of former acquittal will be bad. Although it is not necessary that the allegations in the two indictments should be precisely the same, the true test is said in *Commonwealth* v. *Roby, supra,* quoting from *Rex* v. *Vandercomb,* Leach, 708, 720, to be this: "unless the first indictment were such as the prisoner might have been convicted upon by proof of the facts contained in the second indictment, an acquittal on the first indictment can be no bar to the second."   The defendant could not have been convicted of bribery on the facts alleged in the larceny indictment.   In point of law the two indictments were for distinct offences, the bribery charge accusing the defendant of taking the money to influence his official action in a particular matter, the larceny indictment alleging that the defendant "did steal money . . . of the property of Joseph Katzeff."   The bill of particulars alleged the false pretences of the defendant; he may have been acquitted of the bribery charge because he did not intend to accept a bribe.   The allegations of larceny in the present case are sustained by facts which would be insufficient to prove the crime of bribery.   *Commonwealth* v. *Tenney,* 97 Mass. 50.   *Commonwealth* v. *Cabot,* 241 Mass. 131, 153.   See *Commonwealth* v. *Perry,* 248 Mass. 19, 28, 29.   The cases relied on by the defendant are not applicable.

There was no error in overruling the defendant's motion to quash. As matter of law the offences were distinct.

The judge was right in refusing to permit counsel for the defendant in his argument to the jury to comment on the former trial. The fact that the defendant had been acquitted on the bribery charge could not be used to influence the jury in considering the larceny offence.

According to the language of the report, the defendant is to stand convicted.

*So ordered.*