COMMONWEALTH *vs.* MICHAEL ANCILLO.

Suffolk.    November 1, 1965. — March 11, 1966.

Present:  SPALDING, WHITTEMORE, CUTTER, KIRK, SPIEGEL,
& REARDON, JJ.

*Larceny.    False Pretences.    Municipal Corporations,* Officers and agents.

In a criminal proceeding for attempted larceny by false representations, an allegation in the indictment that the defendant knowingly and falsely represented to an applicant for a zoning variance that he, the defendant, had power to procure a favorable decision by the zoning board of appeals on the application was not supported by evidence showing at most that he represented that the board, having the power to grant the variance, looked to him for advice and that he would give advice favorable to the applicant [431]; and an allegation that the defendant knowingly and falsely represented that he would procure a favorable decision by the board upon payment of a certain sum by the applicant was not sup-

ported where it appeared that the sum never was paid and it did not appear that if it had been paid the variance would not have been granted or that the representation was false [431–432]; CUTTER, J., concurred on another ground in sustaining the defendant's exceptions.

INDICTMENT found and returned on July 30, 1964.

The case was heard by *Kalus, J.*

*Avram G. Hammer* (*Joseph Gorfinkle* with him) for the defendant.

*John T. Gaffney,* Assistant District Attorney (*Thomas E. Finnerty,* Legal Aid to the District Attorney, with him), for the Commonwealth.

KIRK, J.   The indictment charges, in substance, that the defendant, the building inspector of the city of Revere (the city), attempted by means of false representations to steal $12,000 from Elmer E. Taber.   More specifically, it alleges that the defendant wilfully, knowingly, and falsely represented to Taber that (a) he had the power to procure a favorable decision by the board of appeals of the city on an "appeal for change in application of zoning ordinance" and (b) he would exercise that power and procure a favorable decision from the board of appeals upon the payment to him of $12,000.   The case was tried before a judge, sitting without jury, who found the defendant guilty.

The defendant excepted to the judge's denial of his motion to quash the indictment and to the denial of his motion, at the close of the evidence, for a finding of not guilty.

Because of the extended abstract discussion which would be necessary, we do not pause to consider the validity of this rather unusual indictment which conjoins an alleged misrepresentation of existing fact and an alleged false conditional promise of performance in the future.

We consider the case on the basis of the sufficiency of the evidence offered by the Commonwealth in support of the charge as made.   Taber, a real estate broker and a lifelong resident of Revere, wanted to build a fifteen story apartment building on a site at Revere Beach Boulevard and Ocean Avenue in that city.   In March, 1964, Taber, who had known the defendant "practically all his life" and

had gone to school with him, went to the defendant, told him of his plans and said, "I know you've got a lot of influence, Mike, and I'd like to have you use it for me." The defendant replied, "I don't know. This might cost you some money." "They're a hungry bunch." "Don't worry. I'll see what I can do." The defendant told Taber that he could not give him a building permit, that a permit such as Taber was seeking would have to come from the board of appeals on application directly to the board, and that a hearing, after publication of notice, would have to be held. The defendant helped Taber prepare the application for the variance. The defendant told Taber that the board was young and inexperienced and relied upon him for advice. In response to Taber's statement, "I hope your advice will be to give me the variance Mike," the defendant said, "Don't worry, it will."

Taber retained an attorney to represent him at the hearing before the board of appeals on June 9, 1964. Prior to the hearing, the defendant told the attorney of the composition of the board and of the procedure to be followed, and he suggested some of the questions which might be asked, and the answers which might be made, as to parking and fire fighting equipment. When asked by Taber if he anticipated any trouble with the appeal board, the defendant said, "Don't worry about them. They're a bunch of knuckleheads. They'll do as they're told."

On June 24, 1964, in a conversation with Taber's attorney, the defendant said, "I want to do everything I can for Elmer Taber; he's a good friend of mine. But Elmer is from Revere. He knows what has to be done, who has to be seen. And they have to have twelve." On June 25, 1964, a conversation took place between Taber and the defendant at which Taber said, "What's this I hear, Mike? They want $1200.00 for the variance?" The defendant said, "$1200.00? No — $12,000.00." Taber said, "I thought you could get me the variance." The defendant replied, "I can get you the variance, but they want $12,000.00." Taber said, "Are you trying to hold me up,

Mike?'' The defendant replied, ''No, I don't want any-
thing for myself. They want $12,000.00. They told me to
add anything I want on top of the $12,000.00 for myself,
but you're my friend. I don't want anything.'' ''They
want twelve, and you'll get the variance, I promise.''
Taber said, ''Supposing I paid the twelve. What guaran-
tee do I have that I would get the variance?'' The de-
fendant answered, ''You give me the $12,000.00. I'll give
you the variance.''

On July 10, 1964, Taber took the matter up with the dis-
trict attorney. On July 28, Taber received from the board
of appeals a decision denying the variance.

Taber testified that the defendant never asked him for
any money for himself, that he (Taber) never intended to
pay $12,000, and that, when told by the defendant that
$12,000 was wanted, he ''didn't do another thing with rela-
tion to the statement.'' Taber's attorney testified that the
defendant never told him that, if he was given $12,000, the
defendant would give him a variance.

The three members of the board of appeals testified.
Two of them testified that they had no discussion with the
defendant concerning the Taber application for a variance.
The chairman testified that, after the hearing on June 9,
1964, the defendant told the board not to act too hastily on
matters of this nature.

It is elementary in the criminal law of this Common-
wealth that ''[t]he offence must not only be proved as
charged, but it must be charged as proved.'' *Common-
wealth* v. *Blood,* 4 Gray, 31, 33. *Commonwealth* v. *Phelps,*
11 Gray, 72. *Commonwealth* v. *Dean,* 109 Mass. 349, 352.
*Commonwealth* v. *Wentworth,* 146 Mass. 36, 38. *Common-
wealth* v. *King,* 202 Mass. 379, 389. *Commonwealth* v.
*Coyne,* 207 Mass. 21, 23–24. *Commonwealth* v. *LaPointe,*
228 Mass. 266, 268. *Commonwealth* v. *Albert,* 307 Mass.
239, 244.

We therefore are not concerned with any crime other
than that which is purportedly charged in the indictment.
That the evidence could support a charge of requesting a

bribe is entirely immaterial since that offence is not charged. We are concerned with whether the foregoing evidence proves the charge of attempted larceny by false pretences. The specific allegation in the indictment that the defendant represented that he "had the power to procure a favorable decision by the Board of Appeals" is not supported by the evidence. The defendant expressly disclaimed that he could grant the kind of "permit" (the variance) which Taber was seeking. The statement that the defendant had "a lot of influence" was made by Taber and not by the defendant. There is nothing in the record to indicate that by word or otherwise the defendant led Taber to believe that Taber's statement about the defendant's influence was true. The most that could fairly be imputed to the defendant with respect to the allegation that he had represented that he had the power to procure a favorable decision by the board of appeals was that, although he could not grant the variance, the board, which had the power to grant the variance, looked to him for advice and that he would give advice which would be favorable to Taber. This falls far short of proving the specific representation of fact alleged in the indictment.

Since the evidence does not warrant the conclusion that the defendant represented to Taber that he had the power to procure a favorable decision by the board of appeals, all that remains of the indictment is the charge that the defendant "did wilfully, knowingly and falsely represent . . . that he . . . would . . . procure . . . [a] favorable decision by the . . . Board of Appeals upon the payment to him" of $12,000. The alleged statements of the defendant: "I can get you the variance, but they want $12,000.00"; "[t]hey want twelve, and you'll get the variance, I promise"; "[y]ou give me the $12,000.00. I'll give you the variance," clearly constitute an offer to enter into a corrupt or illegal bargain. The offer contained a representation that the variance would be forthcoming provided the $12,000 was paid. The difficulty with the Commonwealth's case, however, is that there is no evidence which affords a

rational basis for a finding that the representation as to future performance was false. The crux of the matter is that, as represented by the defendant, the $12,000, and not the defendant's personal favor or power, was to be the decisive factor in the procurement of the variance. The receipt of $12,000 was an express condition precedent to procurement. It is not known and it cannot be said that the variance would be granted or would not be granted if Taber paid the $12,000. In other words it is not known and it cannot be said that the representation made by the defendant in the offer to Taber was false. Proof of the falsity of the representation is an essential element of the offence. *Commonwealth* v. *Iannello*, 344 Mass. 723, 734, and cases cited. Such proof is lacking here. If, in fact, the $12,000 had been paid and the variance was granted, there would be a crime but not the crime of larceny by false pretences. Compare *Commonwealth* v. *Crowley*, 257 Mass. 590, where the defendant, a member of the board of health, affirmatively and falsely represented that he had the power to take away the complainant's license and demanded money from the complainant not to do so, and where the complainant, relying on the representation and hoping to avoid the threatened loss, paid money to the defendant whose conviction for larceny by false pretences was upheld by the court.

Under the authorities cited in the *Iannello* case, it must also appear that the false representation be of an existing fact, and that it be known to or believed by the defendant to be false. Evidence to this effect is also lacking. The falsity of the representation and the defendant's knowledge of its falsity have never been tested or proved. The Commonwealth has not shown that upon the receipt of the $12,000 the defendant would not be able to procure the variance or that he did not intend to procure the variance or that he knew or believed that he could not procure the variance. These remain matters of conjecture.

No citation of cases is needed for the proposition that when any essential element of a criminal charge against a

defendant is left to conjecture the defendant is entitled to an acquittal on the charge. That is the case here.

Other exceptions need not be considered.

*Exceptions sustained.*

CUTTER, J. (concurring) The representations by Ancillo alleged in the indictment seem to me to be representations of existing fact or intention. *Commonwealth* v. *Crowley,* 257 Mass. 590, 594. See *Commonwealth* v. *Morrison,* 252 Mass. 116, 122. I agree that the falsity of these representations was not adequately established by the testimony of members of the board of appeals to the effect that they had not discussed Taber's application for a variance with Ancillo or heard of any discussion of $12,000.

Ancillo also represented to Taber that "they want $12,000." The judge could reasonably infer that the word "they" referred to the board of appeals, which had legal power to grant a variance. Upon the testimony, just mentioned above, of the board members he could reasonably conclude that the representation that "they want $12,000" was false. I concur in the result of the opinion on the limited ground that this representation was not sufficiently clearly alleged in the indictment.