COMMONWEALTH vs. DUDDIE FORD, INC.
(and twenty-two companion cases).

Worcester. October 2, 1990. - February 22, 1991.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Larceny. False Pretenses. Practice, Criminal*, Examination of jurors, Instructions to jury, Duplicative convictions. *Jury and Jurors. Words*, "Property," "Credit."

At the trial of criminal indictments, the judge properly exercised his "broad discretion" in determining there was no substantial risk of extraneous influences on the venire such as would require individual voir dire more extensive than that which he had already conducted [392-393], nor was there any error or abuse of discretion in his declining, after jury empanelment, to conduct further individual or collective voir dire with respect to possible exposure to pretrial publicity [393].

Indictments brought under G. L. c. 266, § 34, alleging that the defendant "with intent to defraud and by a false pretense induce[d a bank] to part with property . . . " were not duplicative of indictments brought under G. L. c. 266, § 33 (2), involving the same transactions alleging that the defendant "with intent to defraud, by a false statement in writing respecting the financial condition, or means or ability to pay, of [an individual] obtain[ed] credit . . . from [a bank]". [393-396]

At the trial of indictments brought under G. L. c. 266, §§ 33 (2) & 34, the judge's instructions to the jury adequately distinguished between obtaining bank credit by false written statements (§ 33 [2]), and inducing the bank to part with money by false pretenses (§ 34), and therefore the convictions were not duplicative based on "the law of the case." [396-397]

INDICTMENTS found and returned in the Superior Court Department on May 7, 1986.

The cases were tried before *William C. O'Neil, Jr.*, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Nancy Gertner* for the defendant.

*Sandra L. Hautanen,* Assistant Attorney General, for the Commonwealth.

O'CONNOR, J. On twelve indictments, a jury found that the defendant, Duddie Ford, Inc. (Duddie Ford), an automobile dealership, "with intent to defraud and by a false pretense induce[d] the Coolidge Bank and Trust Company to part with property in an amount and of a value in all of more than one hundred dollars," in violation of G. L. c. 266, § 34 (1988 ed.). The jury also found on twelve other indictments that Duddie Ford "with intent to defraud, by a false statement in writing respecting the financial condition, or means or ability to pay, of [a specified individual] obtain[ed] credit in an amount and of a value of more than one hundred dollars from the Coolidge Bank and Trust Company," in violation of G. L. c. 266, § 33 (2) (1988 ed.). Each of the latter twelve indictments specified a different individual. The twelve indictments under c. 266, § 34, involved the same twelve transactions that gave rise to the indictments under § 33 (2). After the verdicts were rendered, the Commonwealth nol prossed one of the § 34 indictments. Its reason for doing so is unimportant to this appeal. The judge then imposed sentences on each of the remaining twenty-three indictments.

Duddie Ford appealed from its convictions, raising numerous issues. The Appeals Court reversed one of the convictions (indictment no. 86-112191) under c. 266, § 33 (2), on the ground that the evidence was insufficient to warrant the conviction and affirmed the remaining § 33 (2) convictions. *Commonwealth v. Duddie Ford, Inc.,* 28 Mass. App. Ct. 426, 440-442 (1990). The Appeals Court reversed the convictions on the indictments brought under § 34 and dismissed those indictments. *Id.* at 442. The Appeals Court's reason for reversing those convictions was that they were duplicative of the convictions under the § 33 (2) indictments.

Both the Commonwealth and Duddie Ford applied to this court for further appellate review. The Commonwealth sought further review with respect to the question whether the convictions were duplicative. The defendant's application

focused on the propriety of the jury selection process. We granted both applications. Accordingly, we address those issues as they relate to the eleven remaining convictions under c. 266, § 34, and the eleven under § 33 (2). We do not address the other issues considered by the Appeals Court. We conclude, as did the Appeals Court, and essentially for the same reasons, that there was no error or abuse of discretion in connection with the empanelment of the jury. We disagree with the Appeals Court, however, with respect to whether the convictions under G. L. c. 266, § 34, were duplicative of the convictions under c. 266, § 33 (2). Therefore, we affirm the twenty-two convictions.

We deal with the jury selection issue first. Before empanelment began, Duddie Ford moved that the judge conduct an individual voir dire of all the prospective jurors, and that certain specific questions bearing on possible bias be asked. Among the requested questions were these: "Please tell us what if anything, you have read, seen or heard about this case or the alleged facts of this case, or about [the defendant]? Do you have any personal knowledge, information or beliefs about this case, or the defendant, Duddie Ford, Inc., that you have not told the court about yet? Do you have any personal belief, opinion or knowledge about automobile dealerships or salesmen that you have not yet told the court about?" The judge declined to proceed precisely as requested. Instead, after informing the venire of the nature of the case, allowing the attorneys to introduce themselves, and identifying anticipated witnesses, the judge put several questions to the venire collectively. He instructed the jurors to indicate affirmative answers by the raising of hands, and he told the jurors that affirmative answers would be followed up later on. The judge asked the prospective jurors whether any of them had any interest in the case, or had expressed or formed an opinion about it, or was aware of any relevant bias or prejudice, or knew any reason why he or she could not decide the case on the basis of the evidence and the judge's instructions as to the applicable law.

The judge also asked the venire as a group whether any of them had done business with Duddie Ford and, if so, whether that resulted in "some unfavorable impression" on their part, and he asked whether the jurors had read or listened to Duddie Ford advertisements. He also said, "[W]ith all the information I have given you here, is there anything that comes to your mind because of what I have told you here or because of the questions that I have asked you, that you feel that you should bring to my attention before we proceed with the impanelment of the case? Okay. About your business dealings, any unfavorable result from that, those persons I would like to talk to up here. Any other persons who answered yes to any of the questions that I asked, I would like to talk with. Anyone who has something to tell me that I haven't asked specifically, but you feel that you should talk to with me before we proceed with the impanelment." The judge did not specifically ask the venire whether they had been exposed to any publicity about the case or whether they had any preconceived notions about automobile dealers.

Then, following a brief side bar conference with counsel, the judge asked the venire first for a show of hands of those who were "aware of or familiar with" Duddie Ford, and then for a show of hands of those who were not. Although the record is not entirely clear, it appears to be undisputed that a large majority of the venire indicated that they were aware of or familiar with Duddie Ford. The judge excused for lunch "those jurors who didn't raise [their] hand[s] or who [didn't] feel [they had] something [they] want[ed] to bring to [the judge's] attention," and he proceeded with individual voir dire of the prospective jurors who remained. It is clear that many jurors, who had responded affirmatively to the question about their awareness of or familiarity with Duddie Ford, took the luncheon opportunity and were not individually examined. The judge questioned twenty-five jurors individually and excused fourteen of them. He denied Duddie Ford's request for a change of venue and its renewed request for further individual voir dire.

On the following day, two empanelled jurors came forward in response to the judge's questions to the venire, and the judge questioned them. One of them was challenged. Then, in order to complete the jury selection, a second venire was brought into the courtroom and the judge essentially repeated the process used with the first venire. He conducted individual voir dire with respect to three prospective jurors who, on examination of the venire, indicated that they or someone they knew had had a bad experience with Duddie Ford or that they had some other reason that they thought might interfere with their impartiality. All of the second venire indicated that they were aware of or familiar with Duddie Ford, but the judge did not individually examine prospective jurors on that ground alone. Duddie Ford's request for more extensive individual voir dire was denied. Three more jurors were empanelled, none of whom had been questioned individually. Duddie Ford exhausted its peremptory challenges.

General Laws c. 234, § 28 (1988 ed.), provides in relevant part that, "[f]or the purpose of determining whether a juror stands indifferent in [a] case, if it appears that, as a result of the impact of considerations which may cause a decision or decisions to be made in whole or in part upon issues extraneous to the case, including, but not limited to, community attitudes, possible exposure to potentially prejudicial material or possible preconceived opinions toward the credibility of certain classes of persons, the juror may not stand indifferent, the court shall . . . examine the juror specifically with respect to such considerations, attitudes, exposure, opinions or any other matters which may, as aforesaid, cause a decision or decisions to be made in whole or in part upon issues extraneous to the issues in the case. Such examination . . . shall be conducted individually and outside the presence of other persons about to be called as jurors or already called." Rule 20 (b) (2) of the Massachusetts Rules of Criminal Procedure, 378 Mass. 889 (1979), essentially tracks the relevant portion of G. L. c. 234, § 28. The rule provides that "[t]he court shall examine . . . a juror . . . upon issues extraneous to the

case if it appears that the juror's impartiality may have been affected by the extraneous issues. The examination . . . shall be conducted individually and outside the presence of other persons about to be called or already called as jurors."

Under the statute and the rule, the question for the judge in deciding whether individual voir dire is necessary is "whether 'there exists a substantial risk of extraneous influences on the jury.' " *Commonwealth* v. *Kendrick*, 404 Mass. 298, 303 (1989), quoting *Commonwealth* v. *Boyer*, 400 Mass. 52, 55 (1987). *Commonwealth* v. *Sheline*, 391 Mass. 279, 290-291 (1984). As we have repeatedly said, the determination as to whether such a risk exists is subject to the judge's "broad discretion." *Id. Commonwealth* v. *Jackson*, 391 Mass. 749, 756 (1984).

Duddie Ford states that, in response to the judge's questions to the first venire, "[a]t least 61 members" raised their hands, and all the members of the second venire did so, "indicating a possibility of bias." In addition, Duddie Ford points out, more than one half of the members of the first venire who were individually questioned stated that they harbored a bias against Duddie Ford that would interfere with their ability to be impartial. "In spite of this extraordinary showing of jury bias," it is argued, the judge declined to conduct individual voir dire of thirty-six members of the first venire and all but three members of the second venire who had raised their hands but did not come forward for further inquiry.

The judge did not abuse his broad discretion in determining that there was no substantial risk of extraneous influences on the jury requiring a procedure other than the one he followed. For all that the record discloses, those prospective jurors who raised their hands but did not come forward for individual questioning raised their hands only in response to the judge's questions about their awareness of, or familiarity with, Duddie Ford. Those questions and answers revealed nothing about bias. They did not suggest the necessity of follow-up individual questioning. In so far as the record shows, every prospective juror who affirmatively answered questions

that were focused on bias submitted to further individual interrogation. The fact that many of those who did present themselves for individual examination said that they would be biased against Duddie Ford does not suggest that there was a substantial risk that those who did not come forward were also biased. Indeed, in light of the several questions put to the two venires and the judge's invitations to the prospective jurors to come forward if they had problems relating to bias, a prospective juror's not coming forward was an implied representation that he or she was not biased. The judge was entitled to accept such representations. *Commonwealth v. Kendrick, supra* at 303-304, quoting *Commonwealth v. Bianco*, 388 Mass. 358, 368, S.C., 390 Mass. 254 (1983).

On the second day of trial, a juror informed the judge that she had seen a television program about the case, and that, as a result, she would be unable to decide the case on the basis of the evidence. The judge excused the juror. The juror also told the judge that she had asked the other jurors about the television program and that none of them had seen anything on television but "they [had] read things in the paper, you know, previously." The judge declined to ask the jury about their exposure to newspaper publicity, and he denied defense motions for a mistrial and a change of venue. There was no error or abuse of discretion. The juror's report to the judge did not raise a serious question about whether, either before or after empanelment, the jury were subjected to prejudicial materials. Any reported exposure of the jury to publicity, the nature of which is not shown in the record, was to pretrial publicity ("you know, previously"). We recognize that the judge did not specifically ask the jurors about their possible exposure to pretrial publicity. Nonetheless, as we have indicated, we are satisfied that the empanelment procedure was adequate to produce a jury free of bias based either on pretrial publicity or other factors. We conclude that the jury were properly selected and that there was no need for further collective or individual voir dire after empanelment.

We turn now to the issue raised by the Commonwealth's application for further appellate review, that is, whether the

eleven convictions under G. L. c. 266, § 34, are duplicative of the eleven convictions under G. L. c. 266, § 33 (2). We have in mind that the convictions under the former statute involve the same transactions as those under the latter one. As set forth in greater detail in the opinion of the Appeals Court, 28 Mass. App. Ct. at 427-428, the Commonwealth's evidence tended to show that in 1984, Duddie Ford, through a salesman, obtained loan commitments from the Coolidge Bank and Trust Company for customers who were poor credit risks by misrepresenting facts relating both to the customers' ability to pay and to the sale price of the automobiles financed. Then, at the loan closings, the bank issued checks payable jointly to the customers and Duddie Ford.

We begin our discussion by setting out the relevant statutory provisions. General Laws c. 266, § 33 (2), provides in pertinent part that "whoever, with intent to defraud, by a false statement in writing respecting the financial condition, or means or ability to pay, of himself or of any other person, obtains credit from any bank or trust company or any banking institution . . . shall be guilty of larceny." General Laws c. 266 § 34, provides in pertinent part that "[w]hoever, with intent to defraud and by a false pretense, induces another to part with property of any kind or with any of the benefits described in the preceding section shall be guilty of larceny." In connection with each bank loan, Duddie Ford was convicted of the two crimes proscribed by the above-quoted statutes. Duddie Ford's main contention on appeal, which was accepted by the Appeals Court, is that the convictions under the two statutes do not satisfy the test set out in *Morey* v. *Commonwealth*, 108 Mass. 433, 434 (1871), that the Commonwealth may prosecute a defendant under two different statutes for the same act only "if each statute requires proof of an additional fact which the other does not." More specifically, Duddie Ford asserts that the statutory offenses under G. L. c. 266, § 34, and G. L. c. 266, § 33 (2), do not satisfy the *Morey* test because § 34 does not require proof of any fact not required by § 33 (2). Stated in another way, Duddie Ford argues that, since c. 266, § 34, provides that anyone

who fraudulently "induces another to part with property of any kind *or with any of the benefits described in the preceding section [§ 33 (2)]* shall be guilty of larceny," § 34 criminalizes the obtaining of credit fraudulently as does § 33 (2) (emphasis added). Thus, according to the argument, a § 34 crime is necessarily established by proof of a § 33 (2) crime.

Duddie Ford, however, ignores the fact that the Commonwealth did not charge it under § 34 with inducing the bank to part with "any of the benefits described in" § 33. Instead, the § 34 indictments charge Duddie Ford only with inducing the bank to part with "property." Proof of larceny of other "benefits," not having been charged, would have been insufficient for conviction under the § 34 indictments. *Commonwealth* v. *Ancillo*, 350 Mass. 427, 430 (1966), and cases cited (the Commonwealth must not only prove a criminal offense as charged, but it must also charge the offense proved). The critical question, then, is whether obtaining credit by false pretense, prohibited by c. 266, § 33 (2), constitutes larceny of "property" as well. If so, the convictions were duplicative. Otherwise, they were not. We are satisfied that credit is not property within the meaning of § 34.

Our statutes do not explicitly define "property" as that term is used in G. L. c. 266, § 34, or "credit" for purposes of § 33 (2). However, G. L. c. 266, § 30, provides a long list of items which come within the definition of the term "property" as used in that section. Credit is not one of those items. In the absence of a specific contrary provision, it is unlikely that the Legislature intended the term "property" in § 34 to have different meanings in §§ 30 and 34. Furthermore, in common understanding, there is a difference between obtaining credit and inducing another to part with property. "Credit" is usually understood to mean "[t]he ability of a business or person to borrow money or obtain goods on time, in consequence of the favorable opinion held by the particular lender as to [the] solvency and past reliability [of the borrower]." Black's Law Dictionary 367 (6th ed. 1990). The Federal Truth in Lending Act defines "credit" as "the right

granted by a creditor to a debtor to defer payment of debt *or to incur debt* and defer its payment" (emphasis added). 15 U.S.C. § 1602 (e) (1982). *American Express Co.* v. *Koerner*, 452 U.S. 233, 241 (1981), rev'g 615 F.2d 191 (5th Cir. 1981). Thus, in the context of this case, the customers, with Duddie Ford's participation, first obtained credit (a right to incur debt), which was not "property," from the bank, and then obtained "property," which was not credit, in the form of money. The Commonwealth was required to prove a fact for the convictions under each statute that was not required for the convictions under the other. That conclusion, in our view, finds support in *Commonwealth* v. *Greenberg*, 339 Mass. 557, 572 (1959), in which we held that the prohibition against larceny in G. L. c. 266, § 30, and the prohibition against the fraudulent obtaining of credit in c. 266, § 33 (2), declare distinct offenses. We said there that "[i]n one it is the theft of property . . . which is penalized; in the other the fraudulent obtaining of credit." *Id.* The *Morey* test, in our judgment, was met in these cases.[1]

Finally, quoting *Commonwealth* v. *Thomas*, 400 Mass. 676, 681-682 (1987), Duddie Ford argues that, even if this court should conclude that the offenses as charged were not duplicative, the convictions nevertheless were duplicative based on "the law of the case as the judge instructed the jury." In his jury instructions, the judge stated that, with respect to the § 34 indictments, the Commonwealth had to prove that, as a result of false representations made by a Duddie Ford employee, the bank parted with money. Then, in his instructions relative to the § 33 (2) crimes, the judge said that the "essence" of those indictments was that Duddie Ford "created an instrument in writing tending to establish the trustworthiness of a person that was false, presented [it]

---

[1]We note that the parties have not argued, appropriately we think, the issue whether the double jeopardy clause of the Fifth Amendment to the United States Constitution would bar the Commonwealth from charging Duddie Ford with one of the statutory offenses in a subsequent prosecution after obtaining convictions on the other offenses in an earlier prosecution. See *Grady* v. *Corbin*, 110 S. Ct. 2084, 2090 (1990).

to the bank, and the bank relied upon [it], and in relying on that, parted with its money. That is the general picture of the nature of the second set of indictments, if you will, here. Now, the essential elements of that crime are this. That a false statement was made by the [defendant] . . . that the statement was made with an intent to defraud, which really means that the person making the statement knew the statement was false and intended to cause the bank to part with the money; . . . that the false statement related to the means or the ability to pay of the person[s] whose names are set forth in these particular indictments; and that as a result of that, credit was extended by the bank." Viewing the instruction as a whole, which is appropriate, *Commonwealth* v. *Albert*, 391 Mass. 853, 858 (1984), we conclude that the instructions fairly distinguished between obtaining credit by false written statements (§ 33 [2]), and inducing the bank to part with money by false pretenses (§ 34), and that therefore the convictions were not duplicative based on the law of the case as established by the judge's instructions.

We affirm the judgments on all of the indictments except on indictment no. 86-112191. As to that indictment, the judgment is reversed and the verdict is set aside.

*So ordered.*