NOTICE: All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports. If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

15-P-1689                                      Appeals Court


COMMONWEALTH  vs.  BRYAN DRISCOLL.


No. 15-P-1689.

Suffolk.     January 6, 2017. – May 9, 2017.

Present:  Kafker, C.J., Hanlon, & Agnes, JJ.


Fraud.  Larceny.  Motor Vehicle, Insurance.  Insurance, Motor
     vehicle insurance, Defrauding insurer.  Evidence,
     Insurance, Fraud, Hearsay, Business record, Accident
     report, Authentication of document, Best and secondary.
     Practice, Criminal, Hearsay.



Complaint received and sworn to in the West Roxbury
Division of the Boston Municipal Court Department on May 7,
2014.

The case was tried before Paul J. McManus, J.


Sarah M. Unger for the defendant.
L. Adrian Bispham, Assistant District Attorney, for the
Commonwealth.


AGNES, J.  The defendant appeals, after a trial by jury,

from his convictions on a complaint charging him with motor

vehicle insurance fraud in violation of G. L. c. 266, § 111B,

and attempted larceny of property with a value greater than $250 in violation of G. L. c. 274, § 6.

Background.  The jury could have found the following facts based on the evidence presented at trial.[1]  On August 30, 2012, the defendant obtained compulsory and comprehensive insurance coverage from Commerce Insurance Company (Commerce) on his 2001 Ford Explorer.  At 4:00 A.M. on November 11, 2012, Boston police Officer Joseph Galvin responded to a report of a motor vehicle accident on Allandale Road in the Jamaica Plain section of Boston.  Allandale Road is a winding, country road sparsely populated with buildings.  Allandale Farm is located on Allandale Road.  Upon arriving at the scene, Officer Galvin found a black 2001 Ford Explorer abandoned on the sidewalk.  It appeared that the vehicle had crashed into a stone wall and sustained damage "all over it."

The defendant filed a "single-vehicle accident" report with Commerce.  Joshua Tucker, a claims adjuster with Commerce, explained that a "single-vehicle accident" or "single-vehicle collision" refers to a situation in which a vehicle is damaged and no other vehicles are involved, such as when a vehicle slides on ice and strikes a snowbank.  In such a case, an insured with "collision" coverage would be compensated by

---

[1] We reserve certain other facts for discussion of specific issues below.

Commerce to cover the loss. A person with only "comprehensive" coverage would not be entitled to recover for his loss in such a case. If, however, a driver strikes an animal and comes to a stop or after striking the animal swerves and then goes off the road and strikes a wall, the loss would be covered under "comprehensive" coverage because it involved an animal strike.

The defendant claimed in his motor vehicle accident report (accident report) (trial exhibit 5) that he hit a "Bison or Moose" on Allandale Road, which caused him to swerve into a stone wall. The defendant reported that the "[a]nimal got up and ran away." No animal was found at the scene. In addition, no hair, fur, or blood was found during the inspection of the defendant's vehicle. At the time of the accident, Allandale Farm did not have any bison, moose, or buffalo. They did have two large Scottish Highland steers, but they did not go missing on the day of the collision. Also, these animals were examined by a veterinarian who found no evidence that they had been injured. An accident reconstruction expert examined the defendant's vehicle and opined that there was no evidence of an animal strike, and that the event had not occurred in the way described by the defendant. An appraiser "deemed the vehicle a total loss"[2] with a value of $5,700.

---

[2] "[T]he amount of damage exceeds the cash value of the vehicle."

The jury were warranted in finding that the defendant was aware that he had comprehensive insurance coverage and not collision coverage on his vehicle, and that he was aware of the differences between these coverages. It was also reasonable for the jury to infer that prior to the event in question, the defendant understood that if he lost control of his vehicle and struck a wall, his insurance would not cover the loss, whereas if he struck an animal before hitting a wall the loss would be covered.

The defendant was charged with one count of motor vehicle insurance fraud under G. L. c. 266, § 111B, and one count of attempted larceny over $250 under G. L. c. 274, § 6. The jury found the defendant guilty on both counts. We affirm the conviction of insurance fraud, but reverse the attempted larceny conviction.

Discussion. The defendant argues that the judge erred by admitting the accident report and his coverage selections page (trial exhibit 2) under the business records exception to the hearsay rule, and allowing Commerce's adjuster, Tucker, and the defendant's insurance agent, Todd Sullivan, to testify to the contents of the defendant's insurance application and policy in violation of the "best evidence rule."[3] We review evidentiary

---

[3] Because certain issues regarding a best evidence rule violation were not preserved by objection at trial, namely

rulings for an abuse of discretion, which requires a demonstration that the judge "made a clear error of judgment in weighing the factors relevant to the decision such that the decision falls outside the range of reasonable alternatives." L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014) (quotation omitted). The defendant also maintains that the Commonwealth presented insufficient evidence to find him guilty on both counts of the complaint. We address each argument in turn.

1. Business records exception. General Laws c. 233, § 78, as amended by St. 1954, c. 87, § 1, provides in part that a record made in the regular course of business "shall not be inadmissible . . . because it is hearsay."[4] "Such a record is

_____

testimony concerning the defendant's insurance application and insurance policy, different standards of review are required.

[4] General Laws c. 233, § 78, reads in pertinent part as follows:

"An entry in an account kept in a book or by a card system or by any other system of keeping accounts, or a writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall not be inadmissible in any civil or criminal proceeding as evidence of the facts therein stated because it is transcribed or because it is hearsay or self-serving, if the court finds that the entry, writing or record was made in good faith in the regular course of business and before the beginning of the civil or criminal proceeding aforesaid and that it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence or event or within a reasonable time thereafter. For the purposes hereof, the word 'business,' in addition to its

presumed to be reliable and therefore admissible because entries in these records are routinely made by those charged with the responsibility of making accurate entries and are relied on in the course of doing business." Wingate v. Emery Air Freight Corp., 385 Mass. 402, 406 (1982). See Mass. G. Evid. § 803(6)(A) (2017). There was evidence that would permit the jury to find that an agent of Sullivan's insurance agency, through which the defendant purchased his insurance, filled out the coverage selections page based on information provided by the defendant, and then transmitted it to Commerce, which in turn relied on the coverage selections page in initiating the inquiry that led to the criminal prosecution of the defendant.

The defendant contends that the coverage selections page does not qualify as a business record because (1) it was a copy, and Tucker's attestation was insufficient to authenticate it; and (2) the necessary foundation for this exception to the hearsay rule was lacking. The coverage selections page lists the defendant, his vehicle, and his choices of automobile insurance coverage. Information contained in the coverage selections page was essential in this case to enable the Commonwealth to prove that the defendant's insurance claim was knowingly fraudulent in violation of G. L. c. 266, § 111B.

---

ordinary meaning, shall include profession, occupation and calling of every kind."

However, we agree with the Commonwealth that Tucker's testimony served to authenticate the copy of the coverage selections page that was admitted at trial as exhibit 2 in satisfaction of G. L. c. 233, § 79A,[5] that Tucker qualified as a keeper of the records, and that his testimony supplied the necessary foundation for the document to be admitted as a business record. See Mass. G. Evid. §§ 803(6), 901(a) (2017).

"Generally, for documents (including business records) to be admissible, regardless of the purpose for which they are being offered, they must be identified, shown to be relevant, and authenticated by a witness who is familiar with them. Here, the manner of authentication was sufficient to provide the necessary indicia of genuineness." Commonwealth v. Duddie Ford, Inc., 28 Mass. App. Ct. 426, 435 (1990), S.C., 409 Mass. 387 (1991). See Commonwealth v. Perez, 89 Mass. App. Ct. 51, 60-61 (2016). Though the rule usually requires an original writing or record, "[i]n 1941, apparently reflecting a recognition of both the development and reliability of mechanical forms of document reproduction, the Legislature enacted G. L. c. 233,

---

[5] General Laws c. 233, § 79A, as appearing in St. 1948, c. 154, provides in part as follows: "Copies of public records, . . . and of records of banks, trust companies, insurance companies and hospitals, whether or not such records or copies are made by the photographic or microphotographic process, shall, when duly certified by the person in charge thereof, be admitted in evidence equally with the originals." See Deutsche Bank Natl. Trust Co. v. Gabriel, 81 Mass. App. Ct. 564, 566-567 (2012).

§ 79A, which" allows certified copies of insurance company records, "when duly certified by the person in charge thereof, [to] be admitted in evidence equally with the originals." Deutsche Bank Natl. Trust Co. v. Gabriel, 81 Mass. App. Ct. 564, 567 (2012), quoting from G. L. c. 233, § 79A. The statute and case law are silent on what is meant by the phrase "duly certified" as it appears in § 79A. However, we draw guidance from Commonwealth v. Deramo, 436 Mass. 40, 48 (2002), where the court discussed the certification requirement of G. L. c. 233, § 76.[6] In Deramo, the court explained that "when a party takes a properly authenticated copy of an official record and then makes his own copy of it, the official whose attestation is required has not 'attested' to the authenticity of that later copy." Ibid. Section 79A appears to be designed to achieve the same purpose as § 76. As a result, Tucker's testimony at trial that exhibit 2 was the defendant's coverage selections page satisfied the attestation requirement under § 79A, even though the copy of exhibit 2 to which Tucker attested did not serve that purpose. See ibid. Therefore, exhibit 2, the coverage selections page, was properly authenticated.

---

[6] "Copies of books, papers, documents and records in any department of the commonwealth or of any city or town, authenticated by the attestation of the officer who has charge of the same, shall be competent evidence in all cases equally with the originals thereof." G. L. c. 233, § 76, as amended by St. 1997, c. 164, § 282.

As to the defendant's second contention, "a document is admissible as a business record if the judge finds that it was (1) made in good faith; (2) made in the regular course of business; (3) made before the action began; and (4) the regular course of business to make the record at or about the time of the transaction or occurrences recorded." Beal Bank, SSB v. Eurich, 444 Mass. 813, 815 (2005). "A judge's decision to admit the records implies these requisite findings under G. L. c. 233, § 78." Ibid.

There is no reference in G. L. c. 233, § 78, to a "keeper of the records." The law presumes that "business records" are sufficiently reliable to overcome a hearsay objection because the judge's preliminary findings demonstrate that the fact finder could conclude that the records are routinely made by someone with a business duty to make "accurate entries and are relied on in the course of doing business." Id. at 815 (quotation omitted). When a witness is called to provide the foundation evidence to permit the judge to make these preliminary findings, it is not necessary that the witness have personal knowledge of the facts contained in the records. See Sellew v. Tuttle's Millinery Inc., 319 Mass. 368, 371 (1946).[7]

---

[7] However, when authentication is a live issue, the judge has discretion to require that a witness who has personal knowledge of the facts stated in the record be called to authenticate a business record. See G. L. c. 233, § 78. See

Likewise, under the Federal Rules of Evidence, there is no requirement that a specially designated "keeper of the records" must supply the foundation evidence to qualify records for admission under the business records exception.[8] The flexible view of who may supply the foundation facts for purposes of the business records exception reflected in the Federal Rules of Evidence is consistent with the settled Massachusetts view that G. L. c. 233, § 78, "should be interpreted liberally to permit the receipt of relevant evidence." Beal Bank, SSB, 444 Mass. at 817 (quotation omitted). See McLaughlin v. CGU Ins. Co., 445 Mass. 815, 819 (2006).

In this case, the record demonstrates that Tucker had sufficient understanding of Commerce's record-keeping system to support admitting the coverage selections page as a business record. Tucker was familiar with the records in question, and

---

also Burns v. Combined Ins. Co. of America, 6 Mass. App. Ct. 86, 92 (1978).

[8] Under the Federal Rules of Evidence, this requirement may be established "by the testimony of the custodian or another qualified witness." Fed.R.Evid. § 803(6) (2017). In order to be a qualified witness for purposes of Fed.R.Evid. § 803(6), the witness does not have to be employed by the record-keeping entity, to have played a role in the creation of the document, or to have personal knowledge of the contents of the document. See United States v. Console, 13 F.3d 641, 657 (3d Cir. 1993); United States v. Iredia, 866 F.2d 114, 119-120 (5th Cir. 1989); United States v. Hathaway, 798 F.2d 902, 906 (6th Cir. 1986). "A qualified witness is simply one who can explain and be cross-examined concerning the manner in which the records are made and kept." Wallace Motor Sales, Inc. v. American Motor Sales Corp., 780 F.2d 1049, 1061 (1st Cir. 1985).

testified that they were made in good faith, kept in the normal course of business, and relied on by Commerce's personnel. Tucker's testimony also served to authenticate the coverage selections page and made up for the absence of an original of the affidavit he prepared. Although there are inconsistencies in Tucker's testimony, we cannot say that the judge abused his discretion in determining that Tucker supplied the foundation requirements for the business records exception. Therefore, the judge did not err in admitting an authenticated copy of the coverage selections page as a business record.

2. Best evidence rule. The best evidence rule expresses a preference for the original of a document or record. It requires that, in order to prove the contents of a writing or record, the proponent must provide the original. See Mass. G. Evid. § 1002 (2017).[9] If the original is not available, the proponent must "show a sufficient excuse for its nonproduction." Commonwealth v. Ocasio, 434 Mass. 1, 6 (2001). In cases where the original has been lost or destroyed, or is otherwise unavailable, a copy or "other evidence of its contents will be admissible, provided that certain findings are made" by the judge. Ibid. The purpose of the best evidence rule is "principally aimed, not at securing a writing at all hazards and

---

[9] The best evidence rule does not apply to photographs, videotapes, audio tape recordings, or data in digital form. See Mass. G. Evid. § 1002 Note at 355-356 (2017).

in every instance, but at securing the best obtainable evidence of its contents." Ibid., quoting from 2 McCormick, Evidence § 237 (5th ed. 1999).

a. Noncertified copies. At trial, the defendant objected to the admission in evidence of noncertified copies of the defendant's coverage selections page and the accident report. The defendant argues that it was error to admit the coverage selections page because it is a copy, not the original, and the Commonwealth did not "show a sufficient excuse for its nonproduction." Ocasio, supra at 6. We agree with the Commonwealth that an application of the best evidence rule is not determinative of whether the coverage selections page was admissible because, as we have already indicated, it was admissible as a business record. See Mass. G. Evid. § 803(6)(A).

The defendant also argues that the accident report should not have been admitted, as it too violated the best evidence rule and was insufficiently authenticated. The relevant portion of the accident report is the defendant's statement that he "swerved" after "contact" with "a large animal (Bison or Moose)." When the statement of a party opponent, which is admissible as an exception to the hearsay rule, see Mass. G. Evid. § 801(d)(2)(A) (2017), happens to be contained in a writing, the proponent is not required to produce or account for

the original.  See Mass. G. Evid. § 1007 (2017).  Here, the only objection to the admission of the accident report raised by the defendant at trial was based on the best evidence rule.  For the first time on appeal, the defendant argues in the alternative that the accident report should not have been admitted because it was not established that it bore his signature or contained his statement and thus did not qualify as the statement of a party opponent.  Although the judge excluded a similar statement made by the defendant to a representative of the insurance fraud bureau on grounds that it was not made voluntarily, and Tucker was not able to authenticate the signature on the accident report as that of the defendant, Tucker did testify on cross-examination that the defendant reported a loss to Commerce because his vehicle "struck an animal, and went off the road." There was no motion to strike.  See Commonwealth v. Wadlington, 467 Mass. 192, 205-206 (2014); Commonwealth v. Houghtlin, 16 Mass. App. Ct. 691, 695 (1983).

As a result, even though the accident report itself was insufficiently authenticated and admitted in violation of the best evidence rule, the jury heard testimony from Tucker from which they reasonably could infer that the defendant filed a claim for a loss with Commerce in which he reported striking a large animal with his vehicle and, as a result, crashed into a wall.  Therefore, assuming it was error to admit the accident

report, a consideration of the evidence as a whole demonstrates that it did not contribute anything of significance to the case.

b.  Testimony on insurance application and policy.  The defendant also contends that the judge allowed Tucker and Sullivan to testify as to the contents of his insurance application and policy in violation of the best evidence rule. In support, the defendant repeats his argument that the originals, or an excuse for their nonproduction, were never provided.  However, the defendant made no objection to the testimony in question.  We review alleged errors not preserved by objection for a "substantial risk of a miscarriage of justice," Commonwealth v. Walker, 443 Mass. 867, 871 (2005), "to determine if we have a serious doubt whether the result of the trial might have been different had the error not been made." Commonwealth v. Azar, 435 Mass. 675, 687 (2002) (quotation omitted).

The judge did not allow the Commonwealth to introduce the defendant's insurance application.[10]  Rather, the testimony of Tucker and Sullivan, based on personal knowledge, explained the different types of insurance coverage; what kinds of incidents were covered under the various types of insurance coverage; the

---

[10] The judge, sustaining the defendant's objection, did not allow the Commonwealth to introduce the insurance application because the insurance application apparently had pages from a different policy mixed in with the file, creating confusion.

types of insurance coverage available to the defendant (comprehensive or collision); and the information generally included in an insurance policy. Defense counsel, on the other hand, through cross-examination of Tucker, elicited testimony about the insurance policy, including its length and description of the types of coverage. Neither Tucker nor Sullivan was permitted to testify directly to the contents of the defendant's insurance application or policy.

We agree with the Commonwealth that any testimony that referred to the contents of the defendant's insurance application or policy was in response to good faith preliminary questions in an effort to lay a sufficient evidentiary foundation before the judge made his ruling that the documents were not admissible. The only testimony about the content of the defendant's insurance application that was admitted before the judge ruled that the document was not admissible was that the defendant signed the application in August, 2012. Considering "the strength of the Commonwealth's case," Commonwealth v. Williams, 65 Mass. App. Ct. 9, 13 (2005), the testimony concerning the defendant's insurance application and insurance policy did not create a substantial risk of a miscarriage of justice.

3. Sufficiency of the evidence. Finally, the defendant argues that the Commonwealth presented insufficient evidence to

support the charges against him.  At the close of evidence, the defendant moved for a required finding of not guilty, which was denied.  When reviewing the denial of a motion for a required finding of not guilty, "we consider the evidence, together with permissible inferences from that evidence, in the light most favorable to the Commonwealth and 'determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  Commonwealth v. Platt, 440 Mass. 396, 400 (2003), quoting from Commonwealth v. Cordle, 412 Mass. 172, 175 (1992).

a.  Motor vehicle insurance fraud.  To find a defendant guilty of violating G. L. c. 266, § 111B, the Commonwealth must present evidence proving beyond a reasonable doubt that

> "(1) the defendant, in connection with a claim under a motor vehicle insurance policy issued by an insurer, (2) with the intent to injure, defraud, or deceive such insurer, (3) did knowingly present to it, or aid or abet in or procure the presentation to it, (4) a notice, statement, or proof of loss, (5) knowing that such notice, statement, or proof of loss contained a false or fraudulent statement or representation, (6) of any fact or thing material to such claim."

Commonwealth v. Jerome, 56 Mass. App. Ct. 726, 732 (2002), quoting from Commonwealth v. Charles, 428 Mass. 672, 683 n.8 (1999).

Here, the testimony provided sufficient evidence from which the jury could find that all six elements were proved.  First, Tucker's and Sullivan's testimony established that the defendant

made a claim under his insurance policy for the incident on Allandale Road. Second, a jury could reasonably infer from the evidence that the defendant intended to fit the incident under his policy by stating that he first struck an animal before swerving his vehicle into the wall. No evidence was found suggesting that an animal was involved in the incident; in fact, there was evidence negating that proposition. Next, based on the evidence, the jury could find that the defendant made the accident report and presented it to Commerce, thus satisfying the third and fourth elements. Fifth, from the evidence regarding the differences between comprehensive and collision coverage, the jury could reasonably infer that the defendant knew he would not be covered if he said he had hit a wall without first hitting an animal.

The jury could infer the final element, materiality, from the unusual nature of the accident, which involved striking a large animal, such as a "Bison or Moose," so close in proximity to urban Boston, in addition to the testimony proving the other elements. Such evidence suggests that the cause of the accident was material to the defendant's claim. Ultimately, the jury could have inferred that the defendant knowingly concocted a story that would bring his accident under the coverage of an insurance policy that otherwise did not cover a single-vehicle accident, and did so by stating that he first hit an animal

before hitting a wall, which caused severe damage to his vehicle.

Therefore, based on the evidence presented at trial, the jury could have found the defendant guilty of motor vehicle insurance fraud under G. L. c. 266, § 111B.

b. <u>Attempted larceny over $250</u>. The jury also found the defendant guilty of attempted larceny over $250. The Commonwealth has conceded that the judge's instruction on this issue was insufficient. "Our review confirms the necessity of this concession." <u>Commonwealth</u> v. <u>Santos</u>, 65 Mass. App. Ct. 122, 124 (2005). Accordingly, the defendant's conviction of the attempted larceny over $250 should be reversed.[11]

<u>Conclusion</u>. The judgment as to the count charging motor vehicle insurance fraud in violation of G. L. c. 266, § 111B, is affirmed. The judgment as to the count charging attempted larceny of property with a value greater than $250 in violation of G. L. c. 274, § 6, is reversed, and the verdict is set aside.

---

[11] The complaint did not specify the type of attempted larceny charged. The judge gave jury instructions only for larceny by asportation, to wit: "first, that the defendant took and carried away property; second, that the property was owned or possessed by someone other than the defendant; and third, that the defendant did so with the intent to deprive that person of the property permanently." The Commonwealth presented no evidence that the defendant "took and carried away property." As the jury were only instructed on this one theory of larceny, the conviction on that count cannot stand. See <u>Commonwealth</u> v. <u>Mills</u>, 436 Mass. 387, 398 (2002) ("A criminal conviction cannot be affirmed on appeal where the jury were not instructed on the elements of the theory of the crime").

<u>So ordered</u>.